## S04F1376. DELLINGER v. DELLINGER.

(609 SE2d 331)

HUNSTEIN, Justice.

This appeal challenges the validity of a self-executing change of visitation provision in a divorce decree. Appellant Sonja Dellinger, a life-long resident of Alabama, filed a divorce petition to end her nine-year marriage to appellee Terry Dellinger in February 2003, six months after the parties moved to Georgia. Appellant sought primary physical custody with joint legal custody of the parties' two children. At the time of the August 2003 hearing on the divorce petition, the older child was six years old and had just entered first grade while the younger child was three years old and in day care. Both parties worked in downtown Atlanta[1] while appellee lived in the marital residence in Douglas County and appellant lived in an apartment with the children. However, appellant testified that if she received custody of the children, she intended to return home to Alabama with them.

Under the terms announced orally by the judge and later incorporated into the final divorce decree, the trial court awarded the parties joint legal custody but gave primary physical custody of the children to appellee. The trial court then formulated two visitation plans. Under "Plan A," appellant had the children for basically half of the time and her child support obligation was set at ten percent of her gross income. The departure from the guidelines was based on "the extended visitation." Also under Plan A the parties would alternate holiday visitation; appellant would have the children for four weeks in the summer; and the parties would share equally in the delivery and return of the children. "Plan B" went automatically into effect if appellant chose to reside "more than thirty-five miles from Douglas County." Under Plan B appellant could visit with her children only on

---

[1] Appellant is a public accountant certified in Alabama but not in Georgia; appellee is a server support analyst with a two-year technical degree.

the first, third and fifth weekend of each month and four weeks of summer vacation; she was required to both collect and return the children; and her child support obligation increased to 23 percent.[2]

Appellant thereafter filed an application to appeal from the final divorce decree, which we granted pursuant to this Court's pilot project. See *Wright v. Wright*, 277 Ga. 133 (587 SE2d 600) (2003).

1. Appellant contends the trial court erred by providing for a self-executing change of visitation should she move more than 35 miles outside of Douglas County without considering the best interests of the children at the time of any such move. We agree and reverse.

In *Scott v. Scott*, 276 Ga. 372 (578 SE2d 876) (2003), this Court held that any self-executing change of custody provision that fails to give paramount import to the child's best interests in a change of custody as between parents must be stricken as violative of Georgia public policy. Id. at 375. This ruling was premised on the idea that the law "recognizes that because children are not immutable objects but living beings who mature and develop in unforeseeable directions, the initial award of custody may not always remain the selection that promotes the best interests of the child." Id. at 373. While we recognize that "[v]isitation rights (even extensive visitation rights) do not constitute custody," *Atkins v. Zachary*, 243 Ga. 453 (254 SE2d 837) (1979), visitation rights are a part of custody and changes in one parent's visitation rights necessarily affect the custodial rights of the other parent. Id.; see also *Nodvin v. Nodvin*, 235 Ga. 708 (221 SE2d 404) (1975). Material changes in one parent's visitation rights also necessarily implicate the best interests of the child because visitation controls the child's contact with the non-custodial parent. Children do not understand or care about the legal niceties the courts draw between visitation and custody: it is the child's contact with the parent that impacts the child's best interests, not whether that contact occurs under the label of visitation or custody. Material changes in the amount of contact with a parent affects a child's best interests regardless whether that parent is the custodial or non-custodial parent. Therefore, we decline to draw a distinction between custody and visitation when a material change in visitation is at issue.

In accordance with *Scott*, supra, we hold that self-executing material changes in visitation violate this State's public policy founded on the best interests of a child unless there is evidence before the court that one or both parties have committed to a given course of

---

[2] The divorce decree is silent whether the alternating holiday visitation schedule would be affected should appellant move to a residence outside the 35-mile zone.

action that will be implemented at a given time; the court has heard evidence how that course of action will impact upon the best interests of the child or children involved; and the provision is carefully crafted to address the effects on the offspring of that given course of action. Such provisions should be the exception, not the rule, and should be narrowly drafted to ensure that they will not impact adversely upon any child's best interests.

Applying our holding to the self-executing change of visitation provision in this case, we first address whether a material change in visitation is involved in this case. Under the terms of the challenged provision, should appellant move to a residence situated more than 35 miles from Douglas County, the children's contact with her will be automatically decreased from Sunday through Wednesday every single week to two days every other weekend. The triggering event thus means that instead of spending half of their lives with appellant, the children will see her at best six days a month during most of the year.[3] We hold that a change of this magnitude constitutes a material change of visitation that is allowable only upon a determination that it is in the best interests of the children at the time of the change. *Scott*, supra.

The dissent posits that the automatic change provision was based on evidence before the trial court at the time of the divorce that appellant intended to return to Alabama after the divorce was finalized and thus the trial court was able to "accurately predict" the impact of appellant's move on the best interests of the children. The trial transcript, however, does not support this argument in that appellant's testimony regarding her intention to return to Alabama was premised upon her receipt of primary physical custody of the children. When asked what she would do if appellee received primary physical custody, the only evidence before the trial court regarding her intentions was that she would do "what is necessary" to provide her children with her presence and time.[4] Given the trial court's custody ruling in favor of appellee, there was no evidence before the trial court upon which it could have "predicted" whether appellant will choose to return to Alabama at any point in the future or instead choose to remain in the Atlanta area near her children.[5] Thus, the

---

[3] The children would still be able to spend four weeks with appellant during the summer.

[4] In his testimony appellee gave no indication that he would consider returning to Alabama to be near his children if appellant was given custody. E.g., after acknowledging he had problems with his daughter, appellee testified that he was "willing to do whatever it takes to remedy that. However, that's going to not take place if [the daughter] is two hundred miles away."

[5] Indeed, the trial court's own statements indicate its recognition that a return to Alabama by appellant might require new court hearings before the visitation issue could be resolved, when it commented that "I did a Plan A and a Plan B because if, in fact, the move occurs then

trial court could not have concluded that appellant had committed to a given course of action, i.e., returning to Alabama, or that she would implement that course of action at any given time.

It is the factual situation existing at the time of the material change in visitation that determines whether a change is warranted, not the factual situation at the time of the divorce decree. See *Scott*, supra at 376. However, the automatic change in visitation provision in this case contains no language limiting its application at or near the time of the divorce. In fact, the challenged provision lacks any expiration date at all. As drafted the provision would authorize implementation of the self-executing change of visitation at any time, even though the change could be triggered months or even years in the future. This material change in the children's visitation would be accomplished automatically and "without any regard to the circumstances existing" in the children's lives at the time of the change. *Scott*, supra at 375. As such, this provision is "utterly devoid of the flexibility necessary to adapt to the unique variables that arise in every case, variables that must be assessed in order to determine what serves the best interests and welfare of a child." Id.

Further undermining the validity of the challenged provision is the arbitrary triggering event chosen by the trial court. Self-executing material changes in visitation must be carefully crafted to connect the occurrence of the triggering event to the best interests of the child or children so as to warrant a material change in visitation. Here, the triggering event — appellant's move to a residence 35 miles from Douglas County — has only a tangential connection with the children's best interests. If the children's commute time was a concern, the provision's arbitrary 35-mile limit has no relationship to traffic patterns and congestion in the metro Atlanta area. Indeed, appellant may very well be able to collect and return her children faster to their Douglas County home driving from a residence in Alabama, outside the 35-mile zone, than she could from a location inside the zone in downtown Atlanta. As drafted, the challenged provision fails to reflect an individualized consideration of the children's best interests in this case and neither recognizes nor promotes those best interests as they may be affected by the triggering event.

In applying *Scott* here, we reiterate its holding that "[n]either the convenience of the parents nor the clogged calendars of the courts can justify automatically [requiring a material change in visitation] absent evidence that the change is in the child's best interests. The paramount concern in *any* [material change in visitation] must be the best interests and welfare of the minor child. [Cit.]" (Emphasis in

we'll have to hire lawyers and pay lawyers and come back to court and do that. . . ."

original.) Id. at 377. When the self-executing change of visitation provision in this case is analyzed under *Scott*, supra, the provision effected a material change in visitation; it was imposed without evidence before the court that appellant had committed to a given course of action she intended to implement at a given time; and the provision was not carefully crafted to apply to that given course of action.[6] The provision thus improperly authorized an open-ended, automatic, material change in visitation without providing for a determination whether the visitation change is in the best interests of the parties' children and without connecting the triggering event to those best interests. It follows that the trial court erred by including that self-executing change in visitation provision in the parties' divorce decree. Therefore, we reverse this case with the direction that the trial court strike the self-executing provision of the decree.

2. "Where the trial court exercises its discretion and awards custody of a child to one fit parent over the other fit parent, this Court will not interfere with that decision unless the evidence shows the trial court clearly abused its discretion. [Cit.]" *Powell v. Powell*, 277 Ga. 878 (596 SE2d 616) (2004). Based on the evidence adduced at the hearing, we cannot say there was a clear abuse of discretion in the trial court's award of custody.

*Judgment reversed with direction. All the Justices concur, except Sears, P. J., Carley and Thompson, JJ., who dissent.*

SEARS, Presiding Justice, dissenting.

Today, the majority opinion improperly curtails the tools available to trial courts to protect the best interests of children in cases involving difficult visitation issues. The majority does so by precluding, except in extremely narrow circumstances, the use of provisions permitting self-executing changes of visitation. In addition, the majority adopts a new rule restricting such provisions, but unfairly fails to remand the case to the trial court to give the court and the parties an opportunity to address the application of the new rule to this case. For these reasons, I dissent to the majority opinion.

Unlike the majority opinion, Justice Thompson's dissent outlines an approach that gives trial courts the flexibility to fashion provisions for self-executing changes of visitation in divorce decrees and thus permits trial courts to ensure that a visitation order protects a child's best interests. In *Scott v. Scott*,[7] this Court adopted a rigid rule prohibiting automatic modifications of custody. Relying on *Scott*,

---

[6] Some evidence, in the form of the guardian ad litem's report, addressed the impact appellant's return to Alabama would have upon the best interests of the parties' two children.

[7] 276 Ga. 372 (578 SE2d 876) (2003).

the majority improperly adopts a new, restrictive rule for determining the validity of self-execution visitation provisions. As outlined by Justice Thompson, given the more flexible rules governing visitation, as opposed to custody, trial courts should be permitted to impose automatic modifications of visitation if, in the trial court's discretion, such provisions are warranted by the evidence. In the present case, because the appellant had contemplated moving to Alabama, and because the trial court had the discretion to conclude that, under the existing visitation arrangement, such a move would not be in the best interests of the parties' children, the trial court did not abuse its discretion in providing for automatic changes to the visitation plan in the event of such a move.

Moreover, the majority requires that a non-custodial parent must have firmly committed to a future move before a trial court may adopt a self-executing provision regarding visitation. The majority adopts this requirement purportedly to protect the child's best interests. The child's best interests, however, are not determined by the level of commitment by the non-custodial parent to a move, but by the degree to which the move, if it happens, will have an impact on the child. And, in this regard, the impact on the child is the same whether the non-custodial parent is firmly committed to moving or has, less firmly, merely contemplated doing so. Thus, trial courts should be permitted to fashion provisions for self-executing changes of visitation in cases, such as the present one, where the non-custodial parent has indicated a desire to move to a different location, and where that move will clearly make the initial visitation provisions a hardship for the children involved.

For the foregoing reasons, I completely join in Justice Thompson's dissent.

I also dissent for a reason not addressed by Justice Thompson. In this case, the majority creates a new rule concerning questions of visitation rights, and that rule requires findings of fact and the exercise of discretion by the trial court. It is unfair to the appellee to adopt such a new rule, and then not to remand the case to the trial court to give it and the parties an opportunity to address the application of the rule to the present case.[8]

For all of the foregoing reasons, I dissent to the majority opinion. I am authorized to state that Justice Carley and Justice Thompson join in this dissent.

THOMPSON, Justice, dissenting.

I believe the self-executing provision modifying visitation in this

---

[8] See *Warehouse Home Furnishings Distrib. v. Davenport*, 261 Ga. 853, 854 (413 SE2d 195) (1992).

case was permissible and a proper exercise of the trial court's discretion. Accordingly, I would affirm the judgment of the trial court.

In *Scott v. Scott*, 276 Ga. 372 (578 SE2d 876) (2003), this Court held that self-executing change of custody provisions are not expressly prohibited by statutory law and that they may be upheld so long as they properly consider the best interests of the child at the time the self-executing change would become effective. Id. at 375. Of course, we must look to the best interests of the child in determining both custody and visitation matters. See OCGA §§ 19-9-3 (a) (2); 19-9-22 (1); 19-9-41. See also *Patel v. Patel*, 276 Ga. 266, 267 (577 SE2d 587) (2003); *Woodruff v. Woodruff*, 272 Ga. 485, 486 (531 SE2d 714) (2000). However, when it comes to visitation, the best interests of the child test can be fulfilled simply by ensuring that the child is given an opportunity to form a reasonable relationship with the noncustodial parent. See *Woodruff*, supra. Thus, unlike custody, visitation may be granted under very flexible terms and gives rise to a greater discretion in the trial court. This Court recognized as much when it noted that it is "inappropriate to apply rigid or bright line rules developed within the context of custody to matters of visitation." (Punctuation omitted.) *Patel*, supra.

A myriad of variables must be considered to modify custody following the relocation of a custodial parent which are inapplicable to the relocation of a noncustodial parent. For example, in determining whether the best interests of the child have been affected by the move of a custodial parent, a court must consider changes in school district and neighborhood safety. *Scott*, supra at 376. However, these changes are of almost no import when the move is made by the noncustodial parent because the child will not attend school in the district in which the noncustodial parent resides. Furthermore, whereas a distant move by a custodial parent may improve the child's schooling, a distant move by a noncustodial parent who has visitation privileges during the school week would negatively impact the child's ability to attend and excel in school.

Of course, the best interests of the child prevail over notions of judicial economy. *Scott*, supra at 377. However, judicial economy and the best interests of the child need not be mutually exclusive. With few exceptions, Georgia's Uniform Child Custody Jurisdiction and Enforcement Act, OCGA § 19-9-40 et seq., provides that the court which made the initial custody determination will retain exclusive, continuing jurisdiction of the matter. Given the broad discretion of trial courts in regard to visitation and their continuing jurisdiction under most circumstances, it is reasonable to accommodate the

concept of judicial economy in a self-executing visitation order so long as actions in the name of judicial economy comport with the best interests of the child.

Reductions in the number of times parents drag visitation issues into court should ensure both predictability and continuity so that the "dynamic character of the children's growth and development is not prejudiced . . . by delayed change of [visitation] when that is needed or by the insecurity of inconclusiveness if [visitation] is to remain the same." *Scott*, supra at 377, n. 5. When a trial court can accurately predict the effect of a future event on the best interests of the children, all parties will benefit from the security and conclusiveness of a self-executing order modifying visitation rights.

"Modification of child visitation rights is a matter of discretion with the trial court." *Parker v. Parker*, 242 Ga. 781, 781 (251 SE2d 523) (1979). In the exercise of its discretion, a trial court must look to the unique situation of each individual case. *Scott*, supra at 373. In this case, the noncustodial parent testified that if she were awarded physical custody of the children she would take them back to Birmingham. She also testified that she was raised in Birmingham and that her family continued to live there; that she visited there almost every weekend; and that she continued to take her children there for regular medical and dental care. Asked if she would move to Birmingham if she was not awarded physical custody, the noncustodial parent could only say she was not sure. In addition, the guardian ad litem averred that in her opinion, the children would be impacted negatively if the noncustodial parent were to move to Birmingham and extended visitation privileges were to continue. Given these facts, I would hold that the self-executing visitation modifications were reasonably designed to comport with a highly likely and significant change in residence of the noncustodial parent and the resulting effects of this relocation on the education, well-being, and best interests, of the children.

I respectfully dissent. I am authorized to state that Presiding Justice Sears and Justice Carley join in this dissent.

DECIDED NOVEMBER 23, 2004.

*Harmon, Smith, Bridges & Wilbanks, Archer D. Smith III, Fred P. Anthony, Jr.*, for appellant.

*Alembik, Fine & Callner, Joseph M. Winter, Michelle G. Harrison, Kenneth W. Krontz*, for appellee.