A11A0565. GOTTSCHALK v. GOTTSCHALK.

(715 SE2d 715)

BARNES, Presiding Judge.

Dean Mark Gottschalk appeals the trial court's order modifying the terms of his visitation with his two children. He also appeals more than a dozen other orders entered during the course of this litigation. For the reasons that follow, we affirm.

The record contains many motions, hearing transcripts, and orders. The index lists 227 documents, including at least eight contempt petitions. Due to the size of the record, the number of orders being reviewed, and the importance of the case to the parties, this court granted the appellant's motion to file a brief of 50 pages

rather than 30, and he has enumerated 17 errors. We have undertaken a thorough review of each pleading and transcript in the 15-volume record, as well as each of the trial court's orders. The trial court has explained the reasoning behind its actions, either orally during hearings or in its written orders, all of which are fact-intensive. Although we have carefully considered each of the appellant's enumerations and the responses of appellee Karen Ann Gottschalk, we will not restate all of the bases for each of the trial court's rulings being appealed.

> [T]he law recognizes that because children are not immutable objects but living beings who mature and develop in unforeseeable directions, the initial award of custody may not always remain the selection that promotes the best interests of the child. While we recognize that visitation rights (even extensive visitation rights) do not constitute custody, visitation rights are a part of custody and changes in one parent's visitation rights necessarily affect the custodial rights of the other parent. Material changes in one parent's visitation rights also necessarily implicate the best interests of the child because visitation controls the child's contact with the non-custodial parent. Children do not understand or care about the legal niceties the courts draw between visitation and custody: it is the child's contact with the parent that impacts the child's best interests, not whether that contact occurs under the label of visitation or custody. Material changes in the amount of contact with a parent affect a child's best interests regardless whether that parent is the custodial or non-custodial parent.

(Citations and punctuation omitted.) *Dellinger v. Dellinger*, 278 Ga. 732, 733 (1) (609 SE2d 331) (2004). In reviewing the correctness of rulings in visitation cases, "we do not substitute our judgment on the evidence for that of the trial judge. It is our duty to affirm unless there is an abuse of discretion in the trial court, and we find none here." *Homans v. Street*, 237 Ga. 649 (229 SE2d 432) (1976).

The parties were divorced in March 2005, and consented to joint legal and physical custody of their two minor children, with primary physical custody and decision-making with the appellee. The final divorce decree provided that the parents were to consult and "consider each other's input" on all major decisions involving the children, and to inform each other of the children's whereabouts and extracurricular activities. The decree also included very detailed visitation provisions, giving the appellant visitation every other

weekend, every Wednesday afternoon, and alternating holidays. In April 2006, a little more than a year after the divorce, the appellee filed a petition seeking to modify the terms of the appellant's visitation so that it would be supervised. She also sought an order requiring the appellant to undergo psychological evaluation.

In response, the appellant admitted having been arrested and denied having a history of violence. He also counterclaimed, seeking a psychological evaluation of the appellee and a contempt citation against her for failing "to consider [his] input with respect to all major decisions" involving the children, among other things. In June 2006, the trial court appointed a guardian ad litem to represent the minor children.

In October 2006, the trial court issued an order to which the parties and guardian consented, appointing Sherri Siegel, Ph.D., as the custody evaluator. The court ordered the parties to cooperate with Dr. Siegel's requests and execute releases to allow Dr. Siegel to discuss her findings with the guardian. The order further provided:

> Upon the completion of the custody evaluation, Dr. Siegel will forward a written report to the Court, to counsel for the parties, and to the Guardian ad Litem. The parties shall be entitled to review the written report. The Court hereby ORDERS, however, that any unauthorized distribution of the contents of Dr. Siegel's report by a party or by counsel to any person shall be subject to sanctions, including a finding of contempt by the Court. Furthermore, if Dr. Siegel's report is filed, it shall be filed under seal by the Clerk of Court.

The trial court issued two more orders relating to Dr. Siegel's custody evaluation report, one in April 2007 authorizing the appellant's attorney to release a copy to the appellant's psychologist, Emmett Fuller, and one in May 2007 authorizing the appellee's attorney to release a copy to the children's psychologist. The last sentence of both orders provided that "[n]o further release of this report is authorized or granted by this Court and the parties and their respective counsel are hereby instructed to strictly adhere to the conditions set forth" in the October 2006 order appointing the custody evaluator.

Meanwhile, in December 2006, the appellee filed a petition for contempt against the appellant, contending that he had refused to participate in or pay his share of the court-ordered psychological and custody evaluation by Dr. Siegel. In March 2007, the trial court entered a consent order in which the appellant agreed, among other things, to attend at least two sessions with Dr. Fuller or Dr. William Buchanan before April 16, 2007, and to pay all outstanding guardian

fees and medical bills. In May 2007, the trial court issued an "interim order," again with the parties' consent, which addressed summer visitation and directed the parties to follow Dr. Siegel's recommendation that the parents continue counseling. For the next 16 months, the parties filed numerous motions and contempt petitions against each other. The case was transferred to a new trial court judge in November 2007, and the appellant obtained a new attorney in April 2008.

The appellee served the appellant's therapist, Dr. Fuller, with a third-party request for the production of documents, and the appellant moved for a protective order on the ground that his communications with his psychologist were privileged under OCGA § 24-9-21 (7). After a hearing in August 2008, the trial court granted the motion in part and denied it in part, agreeing with the appellant that his communications with Dr. Fuller were privileged but ordering the appellant to produce any nonprivileged documents. The court also ordered Dr. Fuller to produce a copy of the appellant's file for an in camera inspection, to determine whether any remaining documents were not privileged. A senior judge reviewed Dr. Fuller's file in camera and made a determination regarding which documents were not privileged, to which the appellant did not object.

In late September and October 2008, the trial court held a five-day hearing on the appellee's petition to modify the appellant's visitation. During the hearing, expert witnesses for both parties testified, as did the parties' therapists, the parties, the custody evaluator, the children's therapist, neighbors, teachers, and other witnesses. During his direct testimony, the appellant's expert witness, Monty Weinstein, Ph.D., began to testify about the methodology used by Dr. Siegel in her custody evaluation report. The trial court discovered that Dr. Weinstein's file contained a copy of the report, and barred Dr. Weinstein from testifying about it because the appellant had not obtained the court's permission to disclose its contents to the witness. Dr. Weinstein thus testified only about his observations of the appellant and children together, opining that they related very well and that the appellant was an excellent parent.

At the fifth and final day of the hearing, the trial court heard additional testimony, followed by the guardian ad litem's reluctant recommendation to require that the appellant's visitation with the children be supervised for a period of time. The guardian based that recommendation on her interviews with the parties, their therapists, and other witnesses, the testimony at trial, and her review of the custody evaluator's report[1] and the appellant's unredacted patient

---

[1] We have reviewed the confidential custody evaluation, which has been transmitted with the record to this court, where it remains under seal.

file from Dr. Fuller. Over the appellant's objection, the court ordered that supervised visitation continue until the court issued a final order.

On December 15, 2008, the trial court issued a 16-page order granting the appellee's petition to modify the appellant's visitation, requiring that it continue to be supervised. The court found that both parents loved the children, who were nine and six, although their ideas about how to accomplish what was best for the children differed. It also found that the appellant had "significant anger issues," particularly with the appellee, which "impair his judgment" to the detriment of the children. The court reviewed incidents related at trial which raised the concern of the appellee, the guardian, and the children's therapist about the appellant's psychological condition, his relationship with his ex-wife as it affects his relationship with his children, and his ability to supervise his children. The appellant rejected the clinical evaluations of the professionals who had seen him and the children and believed the professionals were conspiring with the appellee to take the children from him. Dr. Fuller, the appellant's former therapist, testified he was no longer willing to treat the appellant because the appellant would not follow the therapist's recommendations. The court noted that, while some of the recounted incidents were minor in isolation, in the aggregate they created a concern that the appellant's conduct was "neglectful to the extreme, [and he was] oblivious or deliberately indifferent to his children's fears, whether founded or unfounded, and to their immediate needs and demands." The court found that the appellant was "more preoccupied with annoying and harassing his ex-wife than with his children's feelings and emotions." His conduct was potentially dangerous for the children, the court held.

The court ordered the appellant to attend counseling with the therapist recommended by the guardian, "Dr. Carol Webber," as a condition of visitation, to continue until the therapist determined treatment was no longer necessary. The court also directed the appellant to meet with the children's therapist as the therapist determined necessary; set forth specific visitation schedules for the school year, summer, and holidays; and removed the requirement that the parents discuss "any major decisions impacting the children," making the appellee solely responsible for making those decisions. The order also contained numerous specific directions regarding the children's extracurricular activities and the parents' conduct.

The appellant filed a motion for new trial. On March 13, 2009, the trial court vacated and set aside its December 15, 2008 order and issued a new order to correct the spelling of the recommended therapist to "Carol Webb," not "Carol Webber." The amended order

also provided that supervised visitation would continue until the appellant saw Dr. Webb six times, after which Dr. Webb was to report to the guardian ad litem about whether visitation should continue to be supervised.

The parties filed several petitions for contempt citations against each other. After a hearing on March 13, 2009, the court issued an order finding that the appellant took actions "in direct contravention and defiance of the verbal temporary orders issued by the [c]ourt because of [the appellant's] dissatisfaction with that order," actions that were "the very essence of contempt of court." As the order was not in writing when the appellant defied it, however, the court did not formally find him in contempt for those actions. It denied the appellant's motion for attorney fees to defend against that contempt petition, however.

The court granted the appellee's second motion for contempt against the appellant for his failure to pay $2,500 attorney fees as previously ordered. Further, because the appellant tendered payment of these fees with a money order at the end of the hearing rather than before, the court assessed another $3,000 in attorney fees against the appellant. Similarly, the court granted the guardian's motion for contempt for failing to pay guardian fees as ordered the previous October, which the appellant also paid at the end of the hearing. The court found that the appellant could have paid earlier but decided not to because of "his dissatisfaction with the services rendered by the guardian and with her 'conduct' in this matter," as evidenced by a "particularly vitriolic letter directly to the guardian." The court thus ordered the appellant to pay additional fees to the guardian and deposit money into the court registry to cover future anticipated fees. Finally, in its March 30, 2009 order the trial court denied the appellant's petition to hold the appellee in contempt for purportedly refusing to allow the children to answer the appellant's daily telephone calls.

In April 2009, the court held a hearing on the appellant's motion for new trial and on whether the appellant's attorney, David E. Oles, acted in contempt by disclosing the custody evaluator's report to Dr. Weinstein.

On May 4, 2009, the trial court issued a 12-page order finding the appellant's attorney in contempt for distributing the custody evaluator's report to the appellant's expert without first obtaining the court's permission to do so, and ordered him to pay a $500 fine. On June 5, 2009, the trial court denied the appellant's motion for new trial, and again found the appellant in wilful contempt for failing to pay the appellee's attorney fees as ordered. Because the appellant's refusal to pay was wilful, the court held, it also ordered him to pay the appellee's attorney an additional $1,600 under OCGA

§ 9-15-14 (b).

On June 26, 2009, the appellant filed his notice of appeal, seeking review of the June 5, 2009 contempt order as well as 13 other orders. He amended the notice in November 2009 to include review of the trial court's order denying the appellant's motion to suspend enforcement of the orders until the appeal was resolved. Other orders issued after the notice of appeal was filed are not before this court.

1. The appellant contends that the trial court erred in ordering a custody evaluation in this case because it involved visitation, not custody. We disagree. OCGA § 19-9-22 (1) defines "custody" as including visitation rights, and OCGA § 19-9-3 (a) (7) authorizes the trial court to order a psychological custody evaluation of the family. Further, while the appellant argues that the trial court acted improperly by modifying his visitation rights without a showing of material change in circumstances, OCGA § 19-9-3 (b) specifically allows the trial court to do so. *Nipper v. Rich*, 241 Ga. 123, 124 (244 SE2d 237) (1978).

2. The appellant contends the trial court erred in qualifying the children's therapist as an expert in child psychology during the modification hearing, arguing that the therapist was insufficiently qualified as an expert in general and child psychology. OCGA § 24-9-67.1 (b) provides that "a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion" if specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue. The expert testified that she had a Ph.D. in psychology and had practiced general and child psychology for 25 years.

> The issue of the admissibility or exclusion of expert testimony rests in the broad discretion of the court, and consequently, the trial court's ruling thereon cannot be reversed absent an abuse of discretion. Under *Daubert*, disputes as to an expert's credentials are properly explored through cross-examination at trial and go to the weight and credibility of the testimony, not its admissibility. Accordingly, we find no abuse of discretion.

*Agri-Cycle LLC v. Couch*, 284 Ga. 90, 93 (5) (663 SE2d 175) (2008).

3. The appellant contends the trial court erred in failing to declare a "mistrial" after the guardian ad litem told the court in chambers on the second hearing day that she felt obligated to report to DFCS that the parties' six-year-old son was telling people the appellant was dead. The guardian testified in depth on the record

during the last hearing day about her discussion with the trial court and the parties' attorneys in chambers the previous week. The guardian explained that after hearing the children's therapist and the appellee testify that the son repeatedly said the appellant was dead, along with other evidence presented at the hearing about the son's strange responses to questions about the appellant, she was concerned enough that she felt obligated to report the matter to someone. She called the DFCS hotline, but got no answer so she called the county Crimes Against Children Unit ("CAC") and talked to a sergeant about her concerns. She testified that she suggested to the sergeant that he interview the child, but then agreed that if the child would not answer questions from his therapist he was unlikely to answer questions from the sergeant. She said that she told the sergeant she felt obligated to contact CAC or DFCS about her concerns, and the sergeant responded that she had done her due diligence.

(a) On appeal the appellant argues that the trial court should have declared a "mistrial" after the guardian's statement in chambers that she had made a baseless mandatory report. He asserts that his Sixth Amendment right to confront witnesses against him was violated because he was not present in chambers when the guardian made her statement, which was not then placed on the record. His attorney was present in chambers, however, and made no contemporaneous objection, instead objecting on the last day of the hearing after the guardian placed evidence on the record about the matter. Contrary to the appellant's argument, the guardian did not introduce unreported evidence in chambers. She reviewed the evidence given in open court the previous day and explained why she had taken the action she did.

The appellant filed an affidavit with the trial court stating that no one at DFCS could confirm a report from the guardian and inserted a footnote into his appellate brief commenting that "serious question" exists about whether the guardian made a report to anyone. The guardian explained who she called, why she called, and the resulting conversation, and from her description of events it does not appear that her actions would result in a record at DFCS that could later be uncovered. The guardian's in-chambers statement that she made this report did not constitute a denial of the appellant's right to confront witnesses against him.

(b) The appellant also asserts on appeal that the guardian's statements to the court that she was required to report as a mandatory reporter caused an insurmountable "passion, bias, and prejudice in the mind[ ] of the fact finder against the defendant," which rendered the trial court's appearance of impropriety "fatally lost" when the court did not grant a mistrial. But the appellant gave

the trial court no opportunity to rule on the matter contemporaneously, waiting until the evidence had closed before asserting that the trial court should have stopped the proceedings three days earlier. The appellant cites no support for his argument that this court could find as a matter of law that the trial court was so prejudiced by allegedly inadmissible evidence that it could not have ruled properly. This enumeration is without merit.

4. The appellant argues that the trial court erred in interpreting the court's prior orders as forbidding the parties from allowing their expert witnesses to review the custody evaluator's report to testify about problems with the methodology used. We disagree. The orders we quoted previously are very clear that the report could be disseminated only to the parties, attorneys, and guardian unless otherwise allowed by the court. The language is not susceptible to other interpretation. Further, the parties consented to this order, and both sides had previously sought and obtained permission to reveal the contents of the report to specific people.

5. The appellant argues that, regardless of the language in the orders about the custody evaluator's report, prohibiting the appellant's expert from testifying about the report denied the appellant his due process rights. The trial court relied on the guardian's recommendations, the appellant argued, which were based on the custody evaluator's report. Thus, he contends, his ability to challenge the methodology used by the evaluator was crucial and the court erred in refusing to allow his expert to testify in this regard.

"The fundamental idea of due process is notice and an opportunity to be heard." *Nix v. Long Mountain Resources*, 262 Ga. 506, 509 (3) (422 SE2d 195) (1992). The appellant had notice that the custody evaluator's report was not to be distributed without permission from the court, and had a process available to him that would probably have allowed him to use the report. He did not avail himself of this option.

The appellant did not even give the appellee notice that he would be calling Dr. Weinstein or a second witness, and she moved to exclude their testimony altogether because she had been "ambushed." The appellant argued that he did not update his discovery responses because he did not want to reveal his trial strategy to the opposing side, but the trial court allowed him to call the witnesses anyway, after giving the appellee an opportunity to interview them before the hearing began. We find no due process violation in the trial court's actions.

6. The appellant argues that the trial court violated Dr. Weinstein's Fourth Amendment right to be free of unreasonable searches and seizures. While Dr. Weinstein was testifying and it became apparent he had reviewed the custody evaluator's report, the court asked to see his folder. The witness gave the court his folder without

objection. "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." (Citation and punctuation omitted.) *Atwater v. State*, 233 Ga. App. 339, 340 (2) (503 SE2d 919) (1998). Even if the appellant had standing to bring a Fourth Amendment claim on behalf of the witness, which he does not, the witness consented to the court's request without objection. We find no merit in this enumeration.

7. The trial court did not err in denying the appellant's motion in limine to exclude from the record portions of the custody evaluator's report that he argues were inadmissible hearsay. The appellant argues that this ruling left him unable to challenge statements reportedly made by his children, which were contained in the evaluator's report on which the guardian relied. His solution would be to excise any reference in the record to anything the children said, leaving only the bare conclusions of the professionals who have undertaken to review and analyze the family dynamics in this case.

> [I]n all proceedings involving custody of a child, all information helpful in determining the questions presented, including oral and written reports, may be received by the court and relied upon to the extent of its probative value even though not otherwise competent in the hearing on the petition.

OCGA § 15-11-56 (a). "To the degree any such information contained hearsay, the courts are presumed to have disregarded it." (Punctuation omitted.) *In the Interest of A. C. O.*, 269 Ga. App. 667, 672 (2) (605 SE2d 77) (2004). Thus, the trial court did not err in denying the motion in limine.

8. The appellant's counsel asserts that the trial court erred in finding him in contempt for allowing Dr. Weinstein to review the custody evaluator's report, in contravention of the court's orders that the report should not be disclosed without prior permission. Due process requirements in contempt proceedings include the right to notice of the charges of contempt and an opportunity to be heard, *Hedquist v. Hedquist*, 275 Ga. 188, 189 (563 SE2d 854) (2002), both of which counsel was afforded in this case. The court continued several hearings on the contempt motion against counsel until the court reporter had produced a copy of the hearing transcript, and the court gave counsel a full hearing on the matter.

The contempt finding was not based on illegally seized evidence, but on the file that Dr. Weinstein handed to the trial court upon

request. While the appellant's counsel argues that he innocently misinterpreted the order, the trial court made factual findings otherwise. "A trial judge sitting without a jury is entitled to have his judgment considered as a verdict by a jury; accordingly, it would be inappropriate for this court to substitute its judgment for that of the trial court regarding the weight of evidence and witness credibility." (Punctuation omitted.) *Arnold v. McKibbins*, 210 Ga. App. 262, 264 (2) (435 SE2d 685) (1993) (trial court did not err in declining to hold party and attorney in contempt).

9. The appellant argues several constitutional claims, including claims of violations to his "fundamental right to the care, custody and control of his children," his right to freedom of expression, his right to privacy, and his right to freedom of association. The appellant has not shown that these claims were raised before and ruled on by the trial court, however, and thus we do not address them here. *Waller v. Waller*, 226 Ga. 279 (2) (174 SE2d 433) (1970).

10. The appellant argues that the trial court violated his right to confidential treatment by ordering him to get counseling from a psychologist "who thereafter would divulge her findings and conclusions to [the guardian ad litem] so that she (not the Court) could determine if further supervision of [the appellant] was needed." He claims that the court thus "denied the therapy all confidentiality, allowing it to be shared with third parties," and denied him all parenting time unless he voluntarily waived his right to mental health treatment privacy.

Under OCGA § 24-9-21, communications between a psychotherapist and patient are generally excluded from evidence on grounds of public policy. The crucial issue in determining whether evidence of such communications is admissible in evidence "is not whether the interaction between the mental health worker and the patient was voluntary or involuntary, but rather whether it involved or contemplated treatment," as opposed to an evaluation. *In the Interest of I. M. G.*, 276 Ga. App. 598, 602 (1) (624 SE2d 236) (2005). This is true regardless of whether the counseling was court-ordered or not. *State v. Herendeen*, 279 Ga. 323, 326-327 (613 SE2d 647) (2005). On the other hand, if the court appoints a mental health provider simply to examine and evaluate a person's mental state, no privilege exists because treatment is neither given nor contemplated. Id. at 326.

The trial court in this case ordered the appellant to enter therapy with a particular psychologist, who was recommended by the guardian ad litem during the modification hearing. The court also ordered that, after six counseling sessions, the therapist was to issue a report to the guardian ad litem "specifically making a recommendation with respect to the continuation of supervised visitation."

The court then stated:

> There is to be no privilege with regard to this therapy as it is court-ordered and is ordered for the benefit of the minor children in this matter as well as the [appellant]. [The therapist] may share the results of this therapy with the guardian ad litem and the court, and the [appellant] is specifically required to follow the recommendations of [the therapist] as a condition of his visitation.

We agree with the appellant that the trial court erred in stating that the appellant had no privilege with regard to his therapy because it was court-ordered. As the appellant's relationship with the court-ordered therapist involves or contemplates treatment, his communications with the therapist are privileged. But "[a]n appellant must show harm as well as error to prevail on appeal; error to be reversible must be harmful." (Punctuation and footnote omitted.) *In the Interest of D. W.*, 294 Ga. App. 89, 94 (3) (a) (668 SE2d 533) (2008). In this case, we find that the trial court's erroneous statement of the law was harmless, because the trial court did not order that the therapist reveal privileged communication to a third party, only that the therapist report her conclusions to the guardian ad litem and the court about whether the appellant's visitation with his children should continue to be supervised.

11. We have considered all of the appellant's remaining enumerations of error, including his assertions of error regarding the testimony of his former treating psychologist and the trial court's denial of the appellant's OCGA § 9-15-14 motion for attorney fees. We have also reviewed the appellant's claims that the trial court erred in modifying terms of the Final Divorce Decree that were not related to visitation; in failing to include a parenting plan in a final custody order under OCGA § 19-9-1; and in making certain factual findings, and find no merit in them.

*Judgment affirmed. Adams and Blackwell, JJ., concur.*

DECIDED JULY 13, 2011 —
RECONSIDERATION DENIED JULY 29, 2011.

*David E. Oles*, for appellant.
*Huff, Woods & Hamby, Jeanne D. Woods, Barbara M. Lassiter*, for appellee.