**THIRD DIVISION
ELLINGTON, P. J.,
BETHEL and GOBEIL, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**August 16, 2018**

# In the Court of Appeals of Georgia

A18A1236. JONES v. AHMAD.

BETHEL, Judge.

Leah Jones appeals from the trial court's denial of her petition for modification of child custody and the grant of Khalid Ahmad's counterclaim for modification of child custody. Jones argues that the trial court abused its discretion when it denied her petition to modify custody and visitation. Jones also argues that the trial court should not have accepted the testimony of the guardian ad litem because it was based on an inadequate investigation. Finally, Jones argues that the trial court erred in regard to Ahmad's counterclaim, which was granted in part through a self-executing provision. For the reasons set forth below, we affirm in part, reverse in part, and remand the case with direction.

We first note that Ahmad did not file a brief in this appeal. However, "this does nothing more than admit [Jones'] statement of facts, which so far as they are supported by the record, this court may accept as being prima facie true." *CaCoNi Candy & Gum, Inc. v. Curtis Prods. Co., Inc.*, 245 Ga. App 592, 593 n.5 (538 SE2d 497) (2000) (citation, punctuation, and emphasis omitted). So viewed, Jones's brief asserts, and the record reflects, that Jones and Ahmad are the parents of a minor child who was born in 2012. Ahmad legitimated his paternity of the child in 2013, and the parenting plan entered into by the parties at the time provided that Jones and Ahmad would have joint legal custody of the child, that Jones would have primary physical custody, and that Ahmad would have visitation rights with the child.

The child resides with Jones, two siblings, and Jones' mother. At age 3, the child was diagnosed with autism spectrum disorder (ASD). Jones determined that moving the child to Ohio to attend specialized educational programs for children with ASD would best serve the child's developmental needs.

In her petition, she also alleged that she needed to move to Ohio in order to care for her father. However, during the pendency of Jones' motion, her father passed away.

Jones and Ahmad could not come to agreement in regard to the move Jones proposed. During this time, Jones took the child to Ohio to have him tested for placement in a particular training program. The child was accepted to the program, and the school offered to find educational placements in the Cleveland, Ohio area for his siblings. Ahmad opposed moving the child to Ohio and would not agree to modify the parties' custody arrangement to facilitate the move. Ahmad, in turn, located (and attempted to enroll the child in) an educational program coordinated by Atlanta Public Schools (APS) designed for children with autism spectrum disorder. The school performed testing on the child, and it created an individualized education program for him. The child was later tested for placement in Cobb County schools, which made a similar placement decision based on the findings previously made by APS. The child currently receives additional speech therapy outside of school.

On November 10, 2016, Jones filed to modify the parties' arrangement in regard to Ahmad's parenting time. Ahmad answered on December 20, 2016 and counterclaimed, seeking an order transferring custody of the child to him should Jones elect to leave Georgia. The trial court appointed a guardian ad litem to represent the child's interests and assist the court in making its custody determination. Following a series of hearings, and after receiving testimony from the guardian ad

litem that the child's educational needs were being met in the Cobb County schools and that a move to Ohio would not be in the best interests of the child due to the difficulties it would pose in ensuring visitation time with Ahmad, the trial court denied Jones's petition and granted Ahmad's counterclaim. This appeal followed.

1. Jones first argues that the trial court abused its discretion when it denied her petition to modify custody and visitation. OCGA § 19-9-3 (b) provides, in relevant part:

> In any case in which a judgment awarding the custody of a child has been entered, on the motion of any party . . . that portion of the judgment effecting visitation rights between the parties and their child or parenting time may be subject to review and modification or alteration without the necessity of any showing of a change in any material conditions and circumstances of either party or the child, provided that the review and modification or alteration shall not be had more often than once in each two-year period following the date of entry of the judgment.

> [A] trial court's decision regarding a change in custody/visitation will be upheld on appeal unless it is shown that the court clearly abused its discretion. Furthermore, a trial court faced with a petition for modification of child custody is charged with exercising its discretion to determine what is in the child's best interest. And where there is any

4

evidence to support the trial court's ruling, a reviewing court cannot say there was an abuse of discretion.

*Jackson v. Sanders*, 333 Ga. App. 544, 558-59 (5) (773 SE2d 835) (2015) (punctuation and footnotes omitted).

(a) Jones argues the trial court placed a disproportionate amount of emphasis on the child's relationship with Ahmad and that the trial court refused to consider the child's special needs and alternatives that were available that would enable Ahmad to visit the child even if Jones moved to Ohio. This argument is unavailing.

As with initial awards of custody, when faced with a petition to modify an existing custody arrangement, the trial court is charged with determining whether a change of custody is in the child's best interests. In so doing, pursuant to OCGA § 19-9-3 (a) (3), the trial court "may consider any relevant factor, including but not limited to" the seventeen factors set forth in that Code section. Among those factors are the "love, affection, bonding, and emotional ties existing between each parent and the child" as well as recommendations by a court-appointed guardian ad litem. OCGA § 19-9-3 (a) (3) (A); (O). In this case, the guardian ad litem recommended the denial of Jones' petition, noting that any potential benefits of the educational opportunities for the child in Ohio were outweighed by the child's interest in proximity to Ahmad

5

and Ahmad's extended family. This evidence supported the trial court's determination that a modification of the custody arrangement was not in the child's best interests. The trial court did not abuse its discretion in denying Jones' petition.

(b) Jones also suggests that the trial court should not have accepted the testimony of the guardian ad litem because it was based on an inadequate investigation. We disagree.

Uniform Superior Court Rule 24.9 (3) provides that a guardian ad litem "must exercise due diligence in the performance of his/her duties." Jones argues that the guardian ad litem in this case breached this duty by failing to investigate the child's educational situation, including his medical history and school history. Particularly in light of the child's diagnosis of ASD, Jones argues that the guardian ad litem should have conducted a broader examination of the child's medical history and interviewed specialists in ASD regarding educational opportunities that would best serve the child's needs. However, although a guardian ad litem is empowered by Uniform Superior Court Rule 24.9 (4) to request the child's records and to review other confidential information about the child, nothing in that rule obligates a guardian ad litem to do so in a given case.

6

Moreover, the guardian ad litem's testimony in this case indicates that he contacted officials from the school in Ohio where Jones sought to enroll the child. This contact enabled the school to meet with the child in order to perform an assessment. The guardian ad litem testified that the Ohio school would afford the child with private and special education particular to children with ASD that would not be available to him in Georgia schools, although he suggested that the child's current placement was among the best schools in Georgia for students with ASD. He noted that the school the mother planned to enroll the child in Ohio would likely be a temporary placement and that he would be expected to transition to another program in two years.

The guardian ad litem also testified that he had interviewed Jones, Ahmad, Ahmad's mother, and the child's then-current teacher in Cobb County. He noted that a review of the child's educational progress showed that the child had met some goals, was still progressing on others, but that overall the child was doing "extraordinarily well" and had "made tremendous progress." He testified about the bond shared between Ahmad and the child and expressed concerns about how a move to Ohio would affect that bond. He noted that Ahmad had consistently exercised his

visitation rights, and he expressed worry about how the child, particularly in light of his developmental challenges, would adjust to a transition.

Based on his investigation, the guardian ad litem recommended to the trial court that based on the relationship and bond between the child, Ahmad, and Ahmad's extended family, the reasonable educational placement for the child in Cobb County, and the educational progress the child was making in that placement, Jones and Ahmad should continue their current custody arrangement that preserved Ahmad's current level of involvement in the child's life. He shared his view that a relocation by Jones to Ohio would not allow Ahmad to do that and would have a necessarily detrimental impact on the relationship between the child and Ahmad. During questioning by Jones' counsel, the guardian ad litem admitted that he had not interviewed the child's pediatrician or spoken with teachers at the daycare where he had attended the prior year, but noted that it was his understanding that the child's educational development and forthcoming opportunities were the primary areas of focus in the proceedings.

A trial court can consider a report and recommendation of a guardian ad litem even where it is "aware of the limitations in the thoroughness" of the investigation behind such report. *Ezunu v. Moultrie*, 334 Ga. App. 270, 272 (1) (779 SE2d 44)

(2015). In such circumstances, so long as "nothing in the record suggests that the trial court failed to exercise its own judgment regarding what was in the best interests of the [child,]" this Court will not find an abuse of discretion. *Id*.

Here, although the trial court explicitly relied upon the guardian ad litem's recommendation in denying Jones's petition, it issued its own findings of fact in the case relating to Jones' tenuous connection with the State of Ohio, Ahmad's strong family connections in Georgia, and the child's performance in his current education environment. As these findings were supported by the record, including testimony and records offered by Jones in addition to the testimony given by the guardian ad litem, this enumeration fails.

2. Finally, Jones argues that the trial court erred by granting Ahmad's counterclaim through a self-executing provision. We agree.

In this case, the trial court's order provided that in the event Jones moved outside the State of Georgia, such move would constitute a substantial change in circumstances warranting a modification of custody, parenting time, and child support. The order further provided that should such a move occur, a parenting plan and child support worksheet attached to the order would go into effect. Such plan,

should it be triggered, transfers primary physical custody of the child to Ahmad and grants Jones specified visitation rights.

As our Supreme Court has outlined,

[a] self-executing change of custody/visitation is acceptable as long as it poses no conflict with our law's emphasis on the best interests of the child. However, a self-executing change in custody/visitation that constitutes a material change, i.e., is one that is allowable only upon a determination that it is in the best interests of the child *at the time of the change*, generally violates Georgia's public policy founded on the best interests of the child.

*Johnson v. Johnson*, 290 Ga. 359, 360 (721 SE2d 92) (2012) (emphasis supplied; citations and punctuation omitted). Moreover, as the Supreme Court discussed in *Dellinger v. Dellinger*,

self-executing material changes in visitation violate this State's public policy founded on the best interests of a child unless there is evidence before the court that one or both parties have committed to a given course of action that will be implemented at a given time; the court has heard evidence how that course of action will impact upon the best interests of the child or children involved; and the provision is carefully crafted to address the effects on the offspring of that given course of action.

278 Ga. 732, 733-34 (1) (609 SE2d 331) (2004).

10

In this case, the record does not suggest that Jones has committed to moving to Ohio or that she has planned to do so at a specified time.[1] The record, including testimony by Jones' mother that she would move to Cleveland temporarily to assist Jones *if* she moved there, merely suggests that Jones planned to make such move only with the court's blessing and an accommodating change in the parties' custody and visitation arrangement. Accordingly, although the trial court received evidence regarding how the child's interests would be served by remaining in Georgia as opposed to moving to Ohio, the trial court's order runs afoul of the *Dellinger* standard. *Cf. Durden v. Anderson*, 338 Ga. App. 565, 567 (2) (790 SE2d 818) (2016) (change of custody provision which altered custody arrangement once the minor child reached school age was permissible as it coincided "with a planned event that will occur at a readily identifiable time." (citation omitted)).

Moreover, as in *Dellinger*, the self-executing provision in the trial court's order contains no time limitation or expiration date. *Id*. at 735. As the Supreme Court further elaborated in *Dellinger*,

---

[1] Jones filed an emergency motion with the trial court during the pendency of her modification petition requesting leave to enroll the child in school in Ohio. In that motion, Jones indicated that she had rented an apartment in a suburb of Cleveland, Ohio in order to preserve her right to enroll the child in the school. The record does not reflect any specific ruling on this motion by the trial court.

[i]t is the factual situation existing at the time of the material change in visitation that determines whether a change is warranted, not the factual situation at the time of the [order]. However, the automatic change in visitation provision in this case contains no language limiting its application at or near the time of the [order]. In fact, the challenged provision lacks any expiration date at all. As drafted the provision would authorize implementation of the self-executing change of visitation at any time, even though the change could be triggered months or even years in the future. This material change in the [child's] visitation would be accomplished automatically and without any regard to the circumstances existing in the [child's life] at the time of the change. As such, this provision is utterly devoid of the flexibility necessary to adapt to the unique variables that arise in every case, variables that must be assessed in order to determine what serves the best interests and welfare of a child.

*Id*. at 735 (citations omitted).

The trial court's order in this case suffers from the same infirmity. In one breath, the trial court acknowledges that as the child ages, his educational programs and opportunities will change. In the next, it orders that a change in his custody and his parents' rights of visitation may be triggered at an unspecified future time without any additional judicial oversight. This incongruence, and the order's failure to

12

account for how the child's needs, interests, and circumstances will evolve over time, is precisely the type of ill that *Dellinger* and its progeny seek to prevent.

Accordingly, the self-executing change in custody and visitation should not have been included in the trial court's order in this case.

> It does not follow, however, that the entire judgment must be reversed and the case remanded for a rehearing. [W]e reverse the judgment in part only and remand the case to the trial court with direction that the self-executing . . . provision of the judgment be stricken. The judgment is otherwise affirmed. Any future change in the [custody and visitation arrangement] will be subject to judicial scrutiny into the [child's] best interests as provided by law.

*Ezunu*, 334 Ga. App. at 273 (2) (citations omitted).

*Judgment affirmed in part and reversed in part, and case remanded with direction. Ellington, P. J., and Gobeil, J., concur.*

13