## A06A0831. BREWER v. HARVEY.
(629 SE2d 497)

MIKELL, Judge.

Joe Larry Brewer appeals from the trial court's order awarding him 20 percent of the settlement proceeds in an action for the wrongful death of his son, Austin Brewer. We affirm for the reasons set forth below.

Brewer and Rebecca Harvey, who never married, were Austin's parents. Four-year-old Austin was killed on April 5, 2004, in an automobile collision while riding in a car driven by Harvey. Harvey filed a wrongful death action against the other vehicle's driver and the driver's husband. After Brewer intervened through a consent order, the defendants' insurer agreed to pay a $100,000 settlement. Harvey then filed a motion pursuant to OCGA § 19-7-1 (c) (6) requesting that the trial court apportion fairly the settlement proceeds between Brewer and Harvey.[1] Following an evidentiary hearing, the trial court awarded 80 percent of the settlement proceeds to Harvey and 20 percent of the settlement proceeds to Brewer.

Viewed in a light most favorable to the trial court's findings, the evidence adduced at the hearing showed that from the time of

---

[1] "For cases in which the parents of a deceased child are divorced, separated, or living apart, a motion may be filed by either parent prior to trial requesting the judge to apportion fairly any judgment amounts awarded in the case." OCGA § 19-7-1 (c) (6).

Austin's birth in 1999 until February 2002, Brewer and Harvey lived together with Austin. Harvey went to school and Brewer worked, providing financial support for the family. Brewer was arrested on February 10, 2002, pursuant to a 2001 indictment charging him with possession of methamphetamine. Brewer negotiated a guilty plea with the understanding that Harvey, who had also been charged in the indictment with methamphetamine possession, would not be prosecuted. Brewer testified that he had been a methamphetamine user and seller during Austin's lifetime.

After Brewer went to jail, Austin visited with his father approximately every two weeks for an hour. During this time Austin continued to live with Harvey, and Brewer's mother helped to provide support for Austin with money given to her by Brewer from a tax refund. Brewer and Harvey ended their relationship as a couple while Brewer was incarcerated. After Brewer's release in June 2003, he moved into a trailer neighboring the trailer in which Harvey and Austin were living, and he saw Austin on the weekends. Brewer provided child support under a court order requiring him to pay $25 per week for Austin and $25 per week for Brewer and Harvey's other child. Brewer and Austin maintained a father and son relationship until the time of Austin's death.

After hearing the foregoing evidence, the trial court issued its order finding as pertinent that during a significant portion of Austin's life (i) Brewer was incarcerated, (ii) Brewer regularly used methamphetamine, and (iii) Harvey had primary custody and control of Austin. The trial court then apportioned the settlement proceeds by awarding 80 percent to Harvey and 20 percent to Brewer. Brewer claims that the trial court abused its discretion in making this apportionment. We disagree.

Pursuant to OCGA § 19-7-1 (c) (6), the trial court was required to allocate fairly the settlement proceeds, considering each parent's relationship with the deceased child, "including permanent custody, control, and support, as well as any other factors found to be pertinent." Id. We may not disturb the trial court's decision absent an abuse of discretion. Id.

Brewer challenges the trial court's finding that Harvey had primary custody and control of Austin because no legal proceeding had ever awarded custody or control of Austin to Harvey. However, given that the trial court was directed by OCGA § 19-7-1 (c) (6) to make its decision in light of the relationship between the parents and the deceased child, the trial court was entitled to consider that in practice, if not by judicial order, Harvey retained primary custody and control of Austin.

Brewer also contends that the trial court ignored Harvey's admitted drug use, failed to acknowledge that Harvey did not provide

financial support for Austin, and did not account for the role of the paternal grandmother in Austin's life. See, e.g., *Wymbs v. Stokes*, 236 Ga. App. 742, 743-744 (2) (512 SE2d 669) (1999) (trial court may consider the relationship of the child with his grandmother in apportioning a wrongful death settlement between the parents). For purposes of our review, however, "[i]t is presumed that the trial court . . . properly considered all of the evidence before it. . . . Although the trial court did not specifically enumerate every factor upon which it based its decision, there is no requirement that it do so." *Richardson v. Barber*, 241 Ga. App. 254, 257 (4) (527 SE2d 8) (1999). Furthermore, the evidence which Brewer claims was ignored by the trial court does not weigh so heavily in his favor as to render the trial court's decision unfair and an abuse of discretion. Harvey testified that she used methamphetamine "about a dozen" times, but that she stopped before Brewer went to jail. In comparison, Brewer, who admitted to four felony convictions for methamphetamine possession, apparently never stopped using the drug during Austin's lifetime. During Austin's lifetime Harvey chose to attend school rather than work full time, but the evidence did not show that she was unable to care for Austin or that Brewer, who was ordered to pay $25 per week child support on account of Austin, was Austin's primary financial provider while Brewer was incarcerated or following his release. Austin's paternal grandmother was involved in his life, but not notably more so than his maternal grandmother, who purchased the home in which Harvey and Austin lived.

While evidence showed that Brewer continuously maintained a father and son relationship with Austin, Brewer was either in jail or not living with his son for a significant portion of the child's lifetime. In contrast, Harvey lived with and cared for Austin his entire life. Under the circumstances, we cannot say that the trial court abused its discretion in allocating the settlement proceeds. See, e.g., *Hall v. Bailey*, 253 Ga. App. 595, 596 (1) (560 SE2d 76) (2002) (trial court did not err in awarding ninety-five percent of the settlement proceeds for a son's wrongful death to his mother and five percent to his father).

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 27, 2006 —

*Zack Dozier, Robert S. Windholz*, for appellant.
*George A. Pennebaker*, for appellee.