DECIDED OCTOBER 7, 2011.

*William G. Cromwell*, for appellant.

*Carlock, Copeland & Stair, Michele R. Jones, Stephen M. Katz, David E. Betts*, for appellee.

A11A1277, A11A1526. BLACKMORE v. BLACKMORE (two cases).

(717 SE2d 504)

MCFADDEN, Judge.

In Case No. A11A1277, David Blackmore appeals an order increasing the visitation granted to his former wife, Dawn Blackmore, with their two children. In Case No. A11A1526, he appeals an order denying his motion for supersedeas. Contrary to his arguments, the trial court did not impermissibly change custody by expanding visitation; did not commit harmful error by refusing to review custody evaluation reports; did not rely solely on the testimony of one witness; and was within its authority to restrict the parties from communicating with each other and from attending the children's extracurricular activities. We therefore affirm the final order. To the extent the issue is not moot, we also affirm the trial court's denial of David Blackmore's motion for supersedeas because the trial court did not exceed its authority in exempting the visitation provisions from supersedeas even after David Blackmore had filed a notice of appeal.

The Blackmores divorced in January 2006 and agreed to joint legal and physical custody of their two children and agreed that David Blackmore would have final decision-making authority. Less than five months later, David Blackmore moved to modify custody, contending that Dawn Blackmore's behavior was erratic and unstable. The trial court entered a consent order resolving the modification petition. The parties continued to have joint legal custody, but David Blackmore became the primary physical custodian.

In 2008, Dawn Blackmore filed the instant petition to modify visitation, seeking, among other things, more visitation and primary decision-making authority over healthcare issues and the children's extracurricular activities. David Blackmore filed a counterclaim, seeking dismissal of Dawn Blackmore's petition and a modification of her visitation "to insure that the children [were] not placed in an

unsafe situation."

The parties agreed to the appointment of a guardian ad litem and to the appointment of Dr. Jacqueline Hill as a custody evaluator. Once Hill completed her custody evaluation, the guardian ad litem reviewed it — before the parties received copies — and determined there was a need for immediate intervention. Accordingly, at the urging of the guardian ad litem, David Blackmore filed an emergency motion seeking immediately to limit Dawn Blackmore's visitation and to require that her visitation be supervised.

On July 24, 2009, after hearing testimony from Hill, the trial court entered an order on David Blackmore's emergency motion, adopting in their entirety the recommendations in Hill's custody evaluation. The court ordered Dawn Blackmore's visitation to be supervised and limited to every other Saturday from 9:00 a.m. until 6:00 p.m.

Beginning June 9, 2010, the trial court conducted a final hearing on the modification petition and counterclaim. It entered a final order on July 29, 2010, which removed the restrictions on Dawn Blackmore's visitation and granted her more visitation. The court continued David Blackmore's primary physical and legal custody of the children but ordered that each parent would make decisions regarding the day-to-day care of the children, including their extra-curricular activities and medical treatment, while the children were residing with that parent. The court included a provision prohibiting the parties from contacting each other and preventing them from attending extracurricular activities when the other parent has custody.

David Blackmore filed an appeal. He also filed a motion to enforce supersedeas, contending that the trial court should enforce the July 24, 2009 order on his emergency motion pending the resolution of the appeal of the July 2010 order. Dawn Blackmore responded and filed a motion for supersedeas bond. The trial court denied the motions. David Blackmore also filed an appeal of that order as well as a Rule 40 (b) Emergency Motion seeking the enforcement of the July 24, 2009 emergency order, rather than the July 29, 2010 final order, pending appeal. We denied that motion. We have consolidated the appeals for decision.[1]

1. David Blackmore argues that under OCGA § 5-6-46 (a), the notice of appeal of the final order and his payment of appeal costs triggered automatic supersedeas of that order and that the trial

---

[1] David Blackmore's motion for leave to file a supplemental brief and Dawn Blackmore's motion for leave to file a supplemental response brief are granted. We have read and considered the supplemental briefs.

court erred by denying his motion for supersedeas. He contends that the July 24, 2009 emergency order should have remained in effect and governed custody and visitation pending the appeal of the final order. To the extent that this argument is not moot given our ruling below, see *Simpson v. Simpson*, 233 Ga. 17, 22 (209 SE2d 611) (1974), we find no error.

As to future cases, the legislature has resolved this issue by adding subsection (e) to OCGA § 5-6-34 and subsection (k) to OCGA § 5-6-35. The new subsections provide:

> Where an appeal is taken pursuant to this Code section for a judgment or order granting nonmonetary relief in a child custody case, such judgment or order shall stand until reversed or modified by the reviewing court unless the trial court states otherwise in its judgment or order.

But the new subsections apply "to all notices or applications for appeal filed on or after July 1, 2011," Ga. L. 2011, p. 562, § 4, and thus do not resolve the issues here.

In its order denying David Blackmore's motion for supersedeas and Dawn Blackmore's motion for the imposition of a supersedeas bond, the trial court found that the allegations upon which the July 24, 2009 emergency order was based — that Dawn Blackmore had "emotional and mental issues" — were not supported by any credible evidence and were wholly without merit. It added that the court's intention, as reflected in its nunc pro tunc entry of the final order and its ruling from the bench that Dawn Blackmore's unsupervised visitation begin immediately, was for the "severely restrictive, oppressive and unwarranted" terms of Dawn Blackmore's visitation to be lifted immediately as in the best interest of the children. In its order resolving the supersedeas issue, the court expressly excepted the custody and visitation provisions of its June 12, 2010 order from any supersedeas effect. See *Walker v. Walker*, 239 Ga. 175, 176 (236 SE2d 263) (1977). The trial court did not exceed its authority.

David Blackmore argues that the trial court could not include the language excepting the visitation provisions from supersedeas effect once he had appealed the final order. Instead, he argues, the court had to include the key language at the time the final order was entered. We disagree.

In *Walker*, 239 Ga. at 175, the Supreme Court created a method to modify the automatic supersedeas of custody provisions pending appeal. The court wrote that

> [w]henever an appellee in this situation wishes to challenge

> the grant of an automatic supersedeas *as it relates to custody* pending appeal, he can ask the trial judge to include in his final order a special provision that the custody award is effective as of the date of the judgment to protect the best interest and welfare of the child. Subject to review by this court, this type of order would effectively modify the automatic supersedeas as it regards custody and would be enforceable through contempt proceedings in the trial court.

(Emphasis in original.) Id. at 176. Nothing in *Walker* indicates that the court must include the language at the time the order is entered in order to effectively modify the automatic supersedeas. Indeed, the Supreme Court referred to the party wishing to challenge the automatic supersedeas as "appellee," indicating the party could seek such remedy after a notice of appeal had been filed.

In *Frazier v. Frazier*, 280 Ga. 687, 690-691 (5) (631 SE2d 666) (2006), the Supreme Court extended *Walker* and ruled that a trial court was authorized to except the custody provisions of a divorce decree from the automatic supersedeas provided by OCGA § 9-11-62 (b). That statute, which governs the stay of proceedings upon the filing of a motion for new trial, provides that "[t]he filing of a motion for a new trial or motion for judgment notwithstanding the verdict shall act as supersedeas unless otherwise ordered by the court; but the court may condition supersedeas upon the giving of bond with good security in such amounts as the court may order." As it concerned the supersedeas effect of a motion for new trial, *Frazier* clearly contemplated a post-final-order adjustment to exempt the custody provisions of such final order from automatic supersedeas.

David Blackmore argues that the holding in *Frazier* only applies to motions for new trial, not notices of appeal. But given the Supreme Court's acknowledgment of the trial court's broad authority to decide matters of the supersedeas effect of child custody rulings, as well as the trial court's mandate to protect the best interest and welfare of the children pending appeal, see *Walker*, 239 Ga. at 176, we see no reason to limit the trial court's authority in the manner urged by David Blackmore. Consequently, we conclude the trial court did not err by resolving the issue of supersedeas after David Blackmore had filed his notice of appeal.

2. David Blackmore contends that the court's final order amounted to a de facto change in custody, which was impermissible because there were no changes in material circumstances. See OCGA § 19-9-3 (b). The provisions of the final order which David Blackmore contends amount to a change in custody are the increased amount of visitation granted to Dawn Blackmore as well as the provision in

which the court granted each parent the right to make decisions regarding the children's day-to-day care while the children are in the custody of that parent.

It is true that a trial court may not indirectly change custody by modifying the visitation schedule. *Martin v. Buglioli*, 185 Ga. App. 702, 703 (365 SE2d 866) (1988); *Bullington v. Bullington*, 181 Ga. App. 256, 257 (2) (351 SE2d 700) (1986). But here there was no such change.

In *Martin*, 185 Ga. App. at 703, we held that the trial court created a de facto change in custody by giving the noncustodial parent visitation for the greater part of the year. In *Bullington*, 181 Ga. App. at 257, we held that the trial court created a de facto change in custody by giving the noncustodial parent the right to visitation at all times except for the first weekend of each month, alternating holidays, and a set period of summer vacation. In *Kennedy v. Adams*, 218 Ga. App. 120, 122-123 (3) (460 SE2d 540) (1995), a physical precedent cited by David Blackmore, we held that since the time of visitation provided to the noncustodial parent exceeded the time of custody provided to the custodial parent, the new schedule amounted to a change in custody. But here the increased visitation provided to Dawn Blackmore does not exceed the time of custody allowed to David Blackmore. We conclude that the increase did not amount to a de facto change of custody. Nor did the provision allowing Dawn Blackmore to make decisions regarding the children's day-to-day care when they are in her custody amount to a de facto change in custody.

3. David Blackmore contends that the court abused its discretion in prohibiting the parties from communicating with each other, other than through an intermediary, except in the event of a major medical emergency and except to allow David Blackmore to notify Dawn Blackmore by e-mail of the name and location of the children's school. He also challenges the provision that prohibits the parent not having physical custody at the time from attending the children's extracurricular activities. David Blackmore contends that these provisions violate his constitutional rights and his right to contract.

David Blackmore has not shown that he raised his constitutional arguments before the trial court or that the trial court ruled on them. We therefore cannot address them here. *Gottschalk v. Gottschalk*, 311 Ga. App. 304, 314 (9) (715 SE2d 715) (2011). In any event, "[a] trial court has discretion to place restrictions on custodial parents' behavior that will harm their children." *Ward v. Ward*, 289 Ga. 250 (1) (710 SE2d 555) (2011). The provisions do not, as David Blackmore insists, infringe upon his rights. Rather, they are narrowly tailored conditions justified by the evidence. "In awarding visitation rights, a trial court is authorized to impose such restric-

tions as the circumstances warrant." (Citation and punctuation omitted.) *Moore v. Moore-McKinney*, 297 Ga. App. 703, 713 (5) (678 SE2d 152) (2009) (upholding prohibition against parties possessing weapons when exchanging the children, as evidence supported conclusion that provision was in the children's best interests and provision did not infringe upon the Georgia constitutional right to keep and bear arms).

Although Dawn Blackmore does not object to these provisions being stricken, we are a court "for the correction of errors of law committed by lower courts." *Taylor v. Taylor*, 182 Ga. App. 412, 413 (356 SE2d 236) (1987). Here the lower court did not err. We note that this issue returns to the breast of the court.

4. David Blackmore argues that the court erred by refusing to admit — or even to read — the custody evaluation and amended custody evaluation reports prepared by Hill. Although Hill testified at the hearing, David Blackmore contends that her testimony did not provide all the raw statistical data that is contained in the reports. He also contends that the trial court never reviewed the many sources of information Hill received, but he fails to specify these sources or how they would have affected the outcome.

At the final hearing, Hill testified extensively. She testified about the methods she used to gather data to prepare her custody evaluation. She listed the tests she administered and described them. She testified about the results of the tests and her conclusions. And she testified about her reports. "Since the excluded evidence was merely cumulative, no harmful error is shown. . . ." (Citations and punctuation omitted.) *Walthour v. State*, 196 Ga. App. 721, 722 (1) (397 SE2d 10) (1990).

5. David Blackmore argues that the trial court abused its discretion in relying solely upon the testimony of Dawn Blackmore's psychiatrist to the exclusion of all other testimony and evidence because the psychiatrist testified as her advocate. Nothing in the final order indicates that the trial court failed to consider the other evidence, including the testimony of Hill, the testimony of the children's psychologist, the testimony of the guardian ad litem, the testimony of the children's former nannies, the testimony of the social worker who supervised visitation, the testimony of one child's teacher and the other child's soccer coach, the testimony of Dawn Blackmore, and the testimony of David Blackmore.

Upon appellate review, we presume that the trial court properly considered all of the evidence before it. *Brewer v. Harvey*, 278 Ga. App. 503, 505 (629 SE2d 497) (2006). And "[a]s factfinder, it was the trial court's duty to reconcile seemingly conflicting evidence and to weigh the credibility of witnesses." *Willis v. Willis*, 288 Ga. 577, 580 (3) (d) (707 SE2d 344) (2010). David Blackmore has not shown that

the trial court abused its discretion.

*Judgments affirmed. Phipps, P. J., and Andrews, J., concur.*

DECIDED OCTOBER 7, 2011.

*Brock, Clay, Calhoun & Rogers, Nancy I. Jordan, Debbie C. Pelerose*, for appellant.

*Moore, Ingram, Johnson & Steele, Stephen C. Steele*, for appellee.