**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J., and BOGGS, J.**

**NOTICE:** Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**February 25, 2016**

# In the Court of Appeals of Georgia

A15A1907. COOPER v. COULTER.

PHIPPS, Presiding Judge.

Michael Cooper appeals from the trial court's order denying him custody of his nine-year-old son and modifying his visitation privileges. Finding no error, we affirm.

Viewed favorably to the trial court's ruling,[1] the evidence shows that Tabitha Coulter and Cooper had a brief relationship that produced one child, L. C. Cooper legitimated L. C., and the parties entered into a custody arrangement that placed L. C. in Coulter's custody, awarded Cooper visitation rights, and required Cooper to pay child support. Although Cooper did not always exercise his visitation privileges, he spent more time with L. C. as the child grew older, including weekend visits.

---

[1] See *Driver v. Sene*, 327 Ga. App. 275, 276 (758 SE2d 613) (2014).

In May 2014, L. C. gave Coulter a hand-written note detailing issues he had with his father. The note stated, among other things, that Cooper had "jiggle[d] his privates . . . in front of" L. C., taken baths with him, and slept naked in the bed with him. Shortly after the outcry, Coulter reported the allegations to the police. Cooper denied any misconduct, and no criminal charges were filed. Coulter, however, noticed that L. C. appeared scared when discussing his father. Concerned about L. C.'s safety, Coulter obtained an ex parte restraining order on June 6, 2014, suspending Cooper's visitation privileges. Coulter also filed a complaint for permanent modification and suspension of the privileges. In response, Cooper counterclaimed for custody of L. C., asserting that Coulter had poisoned L. C.'s mind against him and was engaged in an inappropriate, meretricious relationship.

The trial court held a bench trial on the competing claims. L. C. testified and confirmed that he wrote the note, asserting that he was "[t]ired of all that stuff happening" when he visited his father. Although he had asked his father not to behave in this manner, Cooper refused to stop. L. C. stated that he was scared of Cooper, whom he did not want to see again.

Cooper denied the allegations at the bench trial, and his attorney implied that Coulter had coached L. C. to lie so that she could prevent Cooper from seeing his son.

2

Coulter testified, however, that she did not tell L. C. what to say, did not know about L. C.'s allegations until he reported them, and had not plotted to falsify the allegations against Cooper. L. C. similarly testified that no one told him to make the allegations.

The evidence further shows that, despite a provision in the custody decree prohibiting romantic overnight guests, both Coulter and Cooper had engaged in live-in relationships. Cooper lived with his girlfriend for several years after the decree was entered, and Coulter resided with her now ex-husband, Aaron Hartung, for a period of time before they were married. Coulter also admitted that, at the time of trial, a woman with whom she was romantically involved lived with her. Coulter asserted that she and her partner were in a committed relationship and planned to marry through a civil ceremony. L. C., who referred to Coulter's partner as "stepmom," testified that their relationship did not bother him.

Based on the evidence presented, the trial court determined that a material change of circumstances had occurred that supported modification of the custody decree's visitation provisions. Specifically, the court ordered that for six months, Cooper's visitation be exercised in a supervised environment coordinated by Four Points, an outside family agency. After six months, Cooper would have unsupervised

visits with L. C. on weekend days for eight weeks. The decree's original overnight visitation schedule would recommence following that period. The trial court implemented this graduated visitation plan "for the benefit of" L. C., noting that it had "concern[s] about [L.C.'s] emotional well-being." Although the trial court did not alter Coulter's custody, it concluded that she had "willfully violated the wholesome environment clause" of the decree. It further found that she could "purge herself by fully cooperating with Four Points."

1. Cooper argues on appeal that the trial court erred in refusing to place L. C. in his custody. We disagree. A custody modification petition should be granted only "if the trial court finds that there has been a material change of condition affecting the welfare of the child since the last custody award."[2] The trial court exercises its discretion in determining whether a sufficient material change has occurred, and we will not reverse that determination absent abuse.[3]

According to Cooper, Coulter's live-in relationship with her partner authorized a change in custody. Coulter does not dispute that her relationship violated the

---

[2] *Kuehn v. Key*, 325 Ga. App. 512, 513 (1) (754 SE2d 103) (2014) (footnote and punctuation omitted).

[3] See id.

4

"overnight guest" prohibition in the custody decree. But it is clear that both parties ran afoul of the prohibition. And such live-in relationships, by themselves, do not warrant a custody change. The relationship must affect the child's welfare to support modification.[4]

Cooper did not offer any evidence that Coulter's romantic relationships negatively impacted L. C. On the contrary, the record shows that he had a strong bond with his ex-stepfather, referred to his mother's domestic partner as "stepmom," and was not concerned by their relationship. Although Coulter and her partner kissed and hugged in front of L. C., there is no evidence that he saw them engage in sexual activity. The trial court did not abuse its discretion in refusing to alter Coulter's custody on this basis.[5]

Cooper further argues that the trial court should have awarded him custody because Coulter "poisoned" L. C. against him and encouraged L. C. to falsely claim that Cooper engaged in inappropriate conduct. L. C. testified, however, that the

---

[4] See *Livesay v. Hilley*, 190 Ga. App. 655, 656-657 (2) (379 SE2d 557) (1989).

[5] See *Hayes v. Hayes*, 199 Ga. App. 132, 133 (404 SE2d 276) (1991) (meritricious relationship did not warrant change in custody); *Livesay*, supra (trial court erred in removing custody from mother based on mother's relationship with live-in boyfriend where record contained no evidence that relationship adversely impacted child's welfare).

alleged misconduct did occur, and Coulter insisted that she was not engaged in a "plot" against Cooper. Moreover, both asserted that Coulter did not tell L. C. to make the allegations. L. C. stated that he wanted no contact with his father or his father's family, but he attributed that decision to his father's behavior, not his mother's influence. And although L. C. sometimes referred to Hartung as "Dad," thought of Hartung's nieces and nephews as "cousins," and called his mother's domestic partner "stepmom," he understood his actual relationship to these individuals and was not confused by the situation. Given this evidence, the trial court was authorized to reject Cooper's claim that Coulter "poisoned" L. C. against him or encouraged L. C. to lie.[6]

2. Cooper contends that the trial court erroneously modified his visitation privileges. Again, we disagree. The record shows that L. C. had become fearful of his father and did not want to visit him. The trial court declined to suspend Cooper's visitation entirely. But it expressed concern for L. C.'s emotional well-being and concluded that, under the circumstances, a graduated approach to visitation would

---

[6] See *Kuehn*, supra at 507 (we will not reverse a change-of-custody decision that is supported by any evidence). See also *Lewis v. Lewis*, 252 Ga. App. 539, 543 (2) (557 SE2d 40) (2001) ("It is not our function to second-guess the trial court in cases such as this, which turn largely on questions of credibility and judgments as to the welfare of the child. The trial court is in the best position to make determinations on these issues, and we will not overrule its judgment if there is any reasonable evidence to support it.") (citation and punctuation omitted).

benefit the child. The trial court did not abuse its discretion in finding that a modified visitation plan served L.C.'s best interests.[7]

3. Cooper claims that the trial court should have made specific findings of fact and conclusions of law with respect to the visitation issue. Cooper, however, approved the form of the trial court's final order. "[A]fter approving the form of [an] order, a party cannot complain of the court's failure to include findings of fact and conclusions of law."[8]

4. Finally, Cooper argues that the trial court erred in not holding Coulter in contempt for violating the custody decree's wholesome environment clause. The language of the trial court's order belies this claim. Although the order does not use the word "contempt," it explicitly found that Coulter had wilfully violated the clause and that she could "purge herself" by taking certain steps. The court clearly deemed

---

[7] See *Vines v. Vines*, 292 Ga. 550, 552 (2) (739 SE2d 734) (2013) (trial court's discretion in resolving visitation issues will not be disturbed on appeal absent abuse); *Cannella v. Graham*, 325 Ga. App. 596 (754 SE2d 385) (2014) (standard applied in deciding visitation rights is best interests of the child). See also *Gildar v. Gildar*, 309 Ga. App. 730, 731 (710 SE2d 913) (2011) ("If reasonable evidence exists in the record to support the trial court's decision to change visitation rights, then the decision of that court will stand.") (punctuation omitted).

[8] *Wang v. Liu*, 292 Ga. 568, 572 (1) (740 SE2d 136) (2014) (punctuation and footnote omitted).

Coulter in contempt.[9] To find otherwise would elevate form over substance, which we decline to do.[10] Accordingly, this claim of error lacks merit.

*Judgment affirmed. Doyle, C. J., and Boggs, J., concur*.

---

[9] See *Ansell v. Ansell*, 328 Ga. App. 586, 592 (3) (759 SE2d 916) (2014) ("The essence of civil contempt is willful disobedience of a prior court order.") (punctuation and footnote omitted).

[10] See *In the Interest of U. B.*, 246 Ga. App. 328, 332 (3) (540 SE2d 278) (2000) (refusing to elevate form over substance).