**FOURTH DIVISION**
**RICKMAN, C. J.,**
**DILLARD, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 31, 2023**

# In the Court of Appeals of Georgia

A23A0283. WHITE v. FANA.

DILLARD, Presiding Judge.

After a brief marriage, John C. White and Malissa S. Fana divorced in January 2016. The final judgment and decree awarded them joint legal custody of their then two-year-old daughter, A. M. W., and awarded Fana primary physical custody. In October 2019, Fana filed an emergency petition for change of custody and visitation, based on allegations that White had been showering nude with A. M. W. in an outdoor shower at his house and had also taken photographs of her in the nude. Following a bench trial, the trial court denied Fana's request for sole legal custody but granted her request to limit White to supervised visitation and, *inter alia*, required him to submit to regular drug testing. On appeal, White contends the trial court erred in (1) limiting his visitation and requiring it to be supervised; (2) granting Fana

"tiebreaker" authority as to religious issues; (3) prohibiting him from sharing images of A. M. W. on social media; (4) requiring him to submit to regular drug testing; (5) ordering that any positive drug test or failure to adhere to other requirements in the parenting plan will result in loss of visitation; and (6) enjoining him from having an outdoor shower at his residence. For the following reasons, we find the majority of the trial court's rulings did not constitute an abuse of discretion, but because its order contained impermissible self-executing visitation provisions, we must vacate it and remand the case for further proceedings consistent with this opinion.

Viewed in favor of the trial court's ruling,[1] the evidence shows that White and Fana married in March 2013, and the couple had a daughter, A. M. W., on December 30 of that same year. A few years later, they separated; and on January 25, 2016, they divorced. The final judgment and decree awarded them joint legal custody, awarded Fana primary physical custody and tiebreaker authority for non-emergency medical, educational, and extracurricular decisions, and awarded White tiebreaker authority for religious decisions. Additionally, the judgment provided that visitation would be

---

[1] *See, e.g.*, *Cooper v. Coulter*, 335 Ga. App. 827, 827 (783 SE2d 350) (2016) (explaining that evidence in a custody case is viewed in favor of the trial court's ruling).

left to the agreement of the parties, but it also outlined a detailed minium schedule for White's visitation if such an agreement could not be reached.

Fana remarried in May 2017, and around October of that year, White began dating Kati Wright. For the next two years, White remained in a relationship with Wright. Then, in late 2018, the couple learned Wright was pregnant with White's child, and they got engaged shortly thereafter. But on January 2, 2019, the couple abruptly ended their relationship.

One month later, the Chatham County Department of Family and Children Services ("DFCS") received a report from Wright alleging that White and A. M. W. frequently showered together in the nude in an outdoor shower at White's residence. In addition, Wright informed DFCS that nearly a year earlier, White sent her a nude photograph, via text message, of A. M. W. wearing a cowboy hat on his front porch. DFCS immediately opened an investigation, informed Fana of the allegations, and issued an interim safety plan, in which it prohibited White from showering with A. M. W. unless he was wearing a bathing suit. In the ensuing investigation, a DFCS caseworker interviewed White and Fana, and A. M. W. underwent a forensic interview. White acknowledged showering with A. M. W., and admitted to taking the photograph at issue (as well as others), but he claimed that nothing about his conduct

3

was sexual in nature. On April 10, 2019, after concluding its investigation, DFCS issued a letter, in which it stated that the report of White's neglect and sexual abuse of A. M. W. was unsubstantiated and no restrictions would be placed on his parental rights. At the time, Fana lodged no objection to DFCS's conclusions and, in fact, according to the DFCS case worker, advocated on White's behalf during the investigation.

In May 2019, Wright gave birth to her and White's son, but because Wright did not want White to have any contact with the child, White filed a petition for legitimation and sought visitation. On October 2, 2019, while that case was pending, A. M. W. disclosed to Fana that during her recent visitation with White, she and White showered together nude. Alarmed, Fana scheduled an emergency session the next day with the counselor A. M. W. had been seeing for other issues, during which, A. M. W. recounted the event. White acknowledged the incident but explained that their daughter vomited on herself and him while at a restaurant and that he immediately took her home and showered with her in order to clean both of them up. Nevertheless, the counselor reported the incident to DFCS, which apparently did not open a second investigation at that time, and similarly instructed White to refrain in the future from showering with A. M. W. unless he was wearing a bathing suit.

4

Subsequently, on October 23, 2019, Wright deposed White in the legitimation action. In that deposition, White admitted that he had showered with A. M. W. a few times since the DFCS investigation, including after the incident at the restaurant. This and other admissions of poor judgment by White—including using marijuana while operating a boat and his SUV when A. M. W. was with him and failing to have a proper car seat for the child—were immediately brought to Fana's attention. On the following day, October 24, 2019, Fana filed an Emergency Petition for Immediate Change of Custody and Visitation, seeking sole legal custody of A. M. W. and a suspension of White's visitation until a safety plan could be implemented. As a result, on October 30, 2019, the trial court issued an emergency order, prohibiting, *inter alia*, White from having overnight visitation, bathing A. M. W., taking nude photographs of his daughter, and transporting her in an inappropriate car seat.

White filed an answer and counterclaim, seeking increased visitation; and discovery between the parties ensued. But on December 10, 2019, Fana filed an Emergency Motion for Modification of Visitation, requesting that White only be allowed supervised visitation for the time being on the grounds that he was using his visitation to improperly influence A. M. W. and alienate her from Fana, and because the child was returning from visitations with soiled underwear. With the petition,

5

Fana attached a DFCS Impending Danger Safety Plan (obtained the previous day), recommending supervised visitation. Two days later, the trial court granted this petition.

On January 7, 2020, the trial court held a temporary hearing, during which White, Wright, Fana, and several counselors testified, and much of the above-referenced evidence was admitted. White admitted to using marijuana in the past, including on an occasion when he and Wright took A. M. W. for a boat excursion and then drove home from the marina afterward. He further admitted to not having a proper car seat for A. M. W. until Fana purchased one for him, and conceded that he would let A. M. W. stand on the center console of his SUV and stick her head out of its sunroof as he drove around a local wildlife preserve. And during Wright's testimony, she repeated the allegation that White often showered nude with A. M. W.—who was 5 years old at the time—in his outdoor shower regardless of the weather. Wright also testified that one time when she was showering with White, he covered himself with soap, called himself a human loofah, and rubbed up against her, claiming it was a game he also played with A. M. W. Additionally, Wright testified that White took numerous nude photographs of A. M. W., which she believed were

inappropriate. On redirect, White admitted to taking many photographs of A. M. W. but denied they were sexual in nature.

Nonetheless, at the conclusion of the hearing, the trial court ordered White to allow law enforcement—which had been investigating the allegations of sexually inappropriate behavior since Fana filed her emergency motion—to search his cell phone and computer and review any questionable images of A. M. W. The court also limited White to supervised visitation and prohibited him from showering with A. M. W. and transporting her without a car seat. In addition, the court ordered that a guardian ad litem be appointed to prepare a report after interviewing A. M. W., White, Wright, and Fana. One month later, the court issued a written order, affirming its earlier directives from the bench, and in a separate order, it appointed a guardian ad litem.

Subsequently, White complied with the trial court's order to cooperate with law enforcement. And on March 30, 2020, the Chatham County Police Department investigator assigned to the case issued a lengthy report, noting that interviews with White and A. M. W. did not produce evidence the child was being sexually abused. The investigator also reviewed numerous photographs recovered from White's various electronic devices and did not find any of them to be sexually graphic in

7

nature. The report also noted that a GBI agent—who had conducted a forensic examination of White's computer—reached the same conclusion regarding the images. As a result, the Chatham County investigator recommended the case be characterized as "unfounded" due to lack of evidence of any sexual abuse.

Nearly a year later, on April 28, 2021, after receiving additional evidence (including the guardian ad litem's report), the trial court issued a final order on Fana's emergency petition to change custody. In that order, filed May 11, 2021, the court denied Fana's request for sole legal custody of A. M. W. but granted her tiebreaker authority for all important decisions and required that White's visitation with his daughter be supervised. The order included a detailed permanent parenting plan, also dated May 11, 2021, which echoed the conclusions in the trial court's order and provided the specifics as to how the parties' custody was to proceed going forward.

Thereafter, White filed a motion for reconsideration, primarily claiming that the guardian ad litem's report contained inaccuracies. Fana filed a response, but on November 18, 2021, White withdrew his motion. Then, the following day, Fana filed an Extraordinary Motion for New Trial and Motion to Reopen Evidence based on new information that White sexually molested his niece in 2012, when she was 14 years old. Additionally, Fana's motion alleged that White had been consistently

violating the May 11, 2021 parenting plan and that his son (with Wright) recently suffered an injury during a visitation. White responded with a motion to dismiss, but on December 22, 2021, the trial court issued an interim order, further restricting his visitation pending review. White then consented to a new trial, and on March 1, 2022, the trial court granted Fana's motion, scheduling a hearing for March 14 and 15, 2022. In that same order, the court explicitly notified the parties—as required—that in making its final custody, it would also be relying on the evidence presented at the January 7, 2020 temporary hearing.[2]

During that hearing, Fana testified, reiterating much of her testimony from the temporary hearing, but also complaining that White often refused to follow the rules set out for visitation, including neglecting to take A. M. W. to her soccer matches, missing medical appointments when he had A. M. W. (but showing up for them when Fana had her), and appearing at A. M. W.'s school without a supervisor. She further testified that he was not sending her the results of his drug testing as required by the May 11, 2021 parenting plan. Fana particularly recounted an instance when White

---

[2] *See Pace v. Pace*, 287 Ga. 899, 901 (700 SE2d 571) (2010) (holding that, absent express notice to the parties, it is error for a trial court to rely on evidence from the temporary hearing in making its final custody determination); *Byrne v. Byrne*, 365 Ga. App. 240, 243-44 (3) (878 SE2d 95) (2022) (same).

failed to notify her that one of his drug tests returned positive, which he claimed he was not required to do because a follow-up test indicated the initial test was a false-positive.

The trial court also heard testimony from White's now 24-year-old niece (his sister's daughter), who explained that, as a young girl, she was close to White and would occasionally stay over at White and Fana's home when they were still married. On one such occasion, when she was 14 years old, she was sleeping in a spare bedroom and woke up to find that White had gotten into her bed, was groping her breast, and asking if it "felt good." She pretended to still be asleep and White left; and although she did not disclose what happened at that time, she avoided spending time with White after that. The niece further testified that she was prompted to disclose the incident to her mother after White recently called her out of the blue, lamenting that they were no longer close. And although White never mentioned anything specific during the call, he told her that he was sorry for the current state of their relationship and wanted to reconcile. Following this phone call, the niece called her mother, who gave her details about White's current custody dispute; and ultimately, the niece decided to disclose the incident to Wright's counsel, as she did not think White could be trusted around his son or A. M. W.

10

Additional testimony during the hearing included that of the woman who supervised White's visits with his son, in which she recounted a recent incident when the two-year-old child sustained an injury as a result of White playing with him too roughly and his subsequent refusal to allow her to examine the child. The former guardian ad litem for A. M. W. also testified at the hearing and stated that she believed White to be unstable, that he had an unhealthy sexual attraction to A. M. W., and that Fana should be awarded sole legal custody of their daughter. In slight contrast, the current guardian ad litem testified that Fana should be awarded all tie-breakers for decision-making but that the parties should retain joint legal custody of A. M. W.

White also testified at the hearing and denied his niece's accusation, claiming his phone call was simply a product of wanting to reconnect with family during what had been a stressful time. And although he again acknowledged smoking marijuana on the day he and Wright took A. M. W. on a boating excursion, he claimed that he no longer smoked marijuana and only rarely drank alcoholic beverages. He also reiterated that he had only showered with A. M. W. a couple of times since the initial DFCS investigation, including right after the incident when A. M. W. vomited on

11

herself and him at the restaurant. And he once again asserted that none of his photographs or videos of A. M. W. were sexual in nature.

At the conclusion of the hearing, the trial court immediately stated that the parties would retain joint legal custody and then discussed how to best structure visitation. Less than a month later, April 4, 2022, the trial court issued an amended final order on Fana's petition to change custody. In its findings of fact, the court recounted much of the evidence discussed above. But although it noted the niece's testimony regarding White's alleged sexual assault, it specifically stated that it was making no finding as to whether it occurred. Thereafter, in its conclusions of law, the trial court affirmed its statement from the hearing that the parties would retain joint legal custody of A. M. W. The court next ruled that Fana would have all decision-making tiebreakers, including for religious decisions, which White had previously held. Then, citing White's refusal to cease showering with A. M. W., failure to use a proper car seat when transporting her, and refusal to comply with the drug-testing requirements in the earlier order, the court ruled visitation would be further restricted (as outlined in the schedule included in the attached parenting plan), and it directed White to remove the outdoor shower from his residence. The attached parenting plan then provided details regarding visitation and further listed seventeen "Rules of

Conduct," to which White was required to comply. One of those rules required White to submit to drug testing and direct the testing center to provide the results to Fana at least 72 hours before his scheduled visitation. Failure to do so would result in suspension of White's visitation until he produced a negative test. This appeal by White of that order follows.

1. In his first four enumerations of error, White contends the trial court erred in limiting his visitation and requiring it to be supervised; granting Fana tiebreaker authority as to religious issues; prohibiting him from sharing images of A. M. W. on social media; and requiring him to submit to regular drug testing. But although White enumerates these errors separately, his argument begins by citing the standard of appellate review applicable to custody rulings and then—primarily, with respect to each of these four claimed errors—he simply asserts the trial court's ruling constituted an abuse of discretion. Accordingly, because White essentially challenges the evidence supporting the trial court's ruling, we address these assertions of error collectively and conclude the trial court did not err in this regard.

When parents contest the issue of custody of a child (which includes visitation), the trial court has "broad discretion, looking always to the best interest of

13

the child."[3] Importantly, when the trial court has exercised that discretion, this Court will not interfere unless "the evidence shows a clear abuse of discretion, and [when] there is any evidence to support the trial court's finding, this [C]ourt will not find there was an abuse of discretion."[4] Indeed, we are ever mindful that "the Solomonic task of making these decisions lies squarely upon the shoulders of the judge who can see and hear the parties and their witnesses, observe their demeanor and attitudes, and assess their credibility."[5]

Here, the trial court found that White continued to shower in the nude with A. M. W. despite the initial DFCS investigation and admonitions that he not do so. Furthermore, the trial court found this behavior inappropriate, as well as his decision to allow his daughter to play in his yard and on the beach nude; and it noted that White never adequately explained why he continued showering with his daughter in

---

[3] *Dupree v. Dupree*, 287 Ga. 319, 323 (7) (695 SE2d 628) (2010) (citation and punctuation omitted); *see* OCGA § 19-9-3 (b) ("[T]his subsection shall not limit or restrict the power of the judge to enter a judgment relating to the custody of a child in any new proceeding based upon a showing of a change in any material conditions or circumstances of a party or the child.").

[4] *Dupree*, 287 Ga. at 323 (7) (punctuation omitted); *accord Williams v. Williams*, 301 Ga. 218, 220 (1) (800 SE2d 282) (2017).

[5] *Smith v. Curtis*, 316 Ga. App. 890, 893 (730 SE2d 604) (2012) (punctuation omitted); *accord Spirnak v. Meadows*, 355 Ga. App. 857, 858 (844 SE2d 482) (2020).

this manner. In addition, the trial court noted that White admitted failing to transport A. M. W. in a proper car seat, allowed her to stand on the center console inside his SUV and stick her head outside of the sunroof while he was driving, and at least once used marijuana while taking A. M. W. on a boat excursion and then driving back home from the marina. Finally, the court recounted evidence that White exhibited poor judgment with regard to visitation, refusing to take A. M. W. to her soccer matches when they occurred on his visitation days; and he was uncooperative with regard to supervision of his visitations. Given these circumstances, evidence supported the trial court's rulings, and so it did not abuse its discretion in determining that limiting White's visitation and requiring it to be supervised; granting Fana tiebreaker authority as to religious issues; prohibiting White from sharing images of A. M. W. on social media; and requiring him to submit to regular drug testing served the child's best interests.[6]

---

[6] *See Vines v. Vines*, 292 Ga. 550, 551-52 (2) (739 SE2d 374) (2013) (holding that appellant's failure to comply with previous court orders regarding visitation and refusal to cooperate with mother and work with child's psychologist was evidence supporting trial court's restrictions on appellant's visitation); *Woodruff v. Woodruff*, 272 Ga. 485, 488 (1) (531 SE2d 714) (2000) ("In awarding visitation rights, a trial court is authorized to impose such restrictions as the circumstances warrant."); *Cooper v. Coulter*, 335 Ga. App. 827, 829-30 (2) (783 SE2d 350) (2016) (holding that evidence the child was fearful of father and did not want to visit supported court's ruling that graduated visitation would be in the child's best interests). Within

2. White also contends the trial court erred in ordering that any positive drug test or failure to adhere to other requirements in the parenting plan would result in loss of visitation, arguing these aspects of the court's order constituted impermissible self-executing visitation provisions. We agree.

Visitation privileges are, of course, part of custody.[7] And self-executing change of custody provisions "allow for an automatic change in custody based on a future

_____

his first enumeration of error challenging the restrictions placed on visitation, White argues the trial court abused its discretion by allowing A. M. W. to decide if she wanted to visit him on holidays and permitting her to choose whether to contact him when she is with Fana. In support of this argument, he cites *Worley v. Whiddon*, 261 Ga. 218 (403 SE2d 799) (1991), for the proposition that even a 14-year-old child's preferences as to visitation are subject to court supervision. *See id.* at 218 (explaining that language amending OCGA § 19-9-3 is simply an assurance to the noncustodial parent that custody based on the wishes of the 14-year-old child does not preclude visitation by the noncustodial parent). But contrary to White's characterization, the trial court's order here does not provide A. M. W. with unfettered license to decide whether to visit White. Rather, when a holiday falls on White's visitation weekend, A. M. W. can choose to remain with Fana, and if she does so, White's visitation will then be rescheduled within 14 days. Similarly, the contact provision simply provides that while in her mother's custody, "[t]he child may contact the father at any reasonable time." So, neither provision allows A. M. W. to limit visitation with White without court supervision, and his claims to the contrary are unavailing.

[7] *Wrightson v. Wrightson*, 266 Ga. 493, 496 (3) (467 SE2d 578) (1996); *accord Hardin v. Hardin*, 338 Ga. App. 541, 543 (1) (790 SE2d 546) (2016).

16

event without any additional judicial scrutiny."[8] Significantly, our Supreme Court has held that "any self-executing change of custody provision that fails to give paramount import to the child's best interests in a change of custody as between parents must be stricken as violative of Georgia public policy."[9]

In this matter, the parenting plan included in the trial court's final order includes seventeen "Rules of Conduct," which White is required to abide by. One of the rules concerning drug testing, in part, provides that: "Should any of the results be positive or if the Father fails to comply with the terms of testing, or if the Mother fails to receive the tests results as required herein[,] no supervised visitation will occur until Father produces a negative drug/alcohol screen." Similarly, the final rule in the trial court's Rules of Conduct provides that "[f]ailure by the Father to adhere to the deadlines, requirements, and/or drug/alcohol screening provisions in these Rules of

---

[8] *Hardin*, 338 Ga. App. at 543 (1) (punctuation omitted); *accord Scott v. Scott*, 276 Ga. 372, 373 (578 SE2d 876) (2003); *Lester v. Boles*, 335 Ga. App. 891, 892 (1) (782 SE2d 53) (2016).

[9] *Dellinger v. Dellinger*, 278 Ga. 732, 733 (1) (609 SE2d 331) (2004); *see Scott*, 276 Ga. at 375 (noting that while "self-executing change of custody provisions are not expressly prohibited by statutory law, we hold that any such provision that fails to give paramount import to the child's best interests in a change of custody as between parents violates this State's public policy as expressed in OCGA § 19-9-3."); *Lester*, 335 Ga. App. at 892-93 (1) (same).

Conduct shall result in forfeiture of Father's visitation until he complies with all Rules of Conduct."

On appeal, White claims these provisions—which unequivocally impact his visitation—are impermissibly self-executing. And we agree that, as currently drafted, these provisions authorize "implementation of the self-executing change of visitation at any time, even though the change could be triggered months or even years in the future."[10] Indeed, this material change in the child's visitation would be "accomplished automatically and without any regard to the circumstances existing in the child's life at the time of the change."[11] Consequently, we vacate the trial court's final order in this regard and direct it to address the foregoing provisions of the parenting plan in a manner consistent with this opinion.[12]

---

[10] *Mashburn v. Mashburn*, 353 Ga. App. 31, 47 (1) (b) (ii) (836 SE2d 131) (2019) (punctuation omitted); *accord Dellinger*, 278 Ga. at 735 (1).

[11] *Mashburn*, 353 Ga. App. at 47-48 (1) (b) (ii) (punctuation omitted); *accord Dellinger*, 278 Ga. at 735 (1); *see Hardin*, 338 Ga. App. at 544 (1) (holding that "self-executing provisions [involving visitation] that execute at some uncertain date well into the future are not permitted because the trial court creating those provisions cannot know at the time of their creation what disposition at that future date would serve the best interests of the child.").

[12] *See Mashburn*, 353 Ga. App. at 47-48 (1) (b) (ii) (vacating trial court's order, in part, because provision stating that mother would lose two visits with child for every positive drug screen, violated the rule against self-executing changes in

18

3. White further contends the trial court erred in enjoining him from having an outdoor shower at his residence, arguing that this aspect of the final order infringed his liberty interests under the Fourteenth Amendment.[13] This argument is a nonstarter.

The trial court's order, as White accurately asserts, enjoined him from having an outdoor shower at any of his residences; and he now claims that such an injunction violates his liberty interests under the Fourteenth Amendment. But White fails to show that he raised this constitutional issue below, much less obtained a ruling from the trial court on any constitutional claim. Suffice it to say, a constitutional issue cannot be considered when asserted for the first time on appeal but "must be clearly raised in the trial court and distinctly ruled upon there."[14] Here, the trial court did not rule on any such claim in its May 11, 2021 order, which contained the identical

---

visitation).

[13] *See* U.S. CONST. amend. XIV, sec. I. (". . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."); GA. CONST. Art. 1, § 1, ¶ I ("No person shall be deprived of life, liberty, or property except by due process of law.").

[14] *In the Interest of N. C.*, 363 Ga. App. 398, 407 (4) (870 SE2d 569) (2022) (punctuation omitted); *accord In the Interest of A. A.*, 253 Ga. App. 858, 862 (3) (560 SE2d 763) (2002).

injunction against having such an outdoor shower, or the April 4, 2022 final order. As a result, White's failure to raise this issue and obtain a ruling from the trial court precludes appellate review.[15]

In any event, the provision prohibiting White from having an outdoor shower does not infringe upon his constitutional rights. Rather, it is a narrowly tailored condition justified by the evidence that he continued showering nude with his daughter despite being admonished for doing so. And in awarding visitation rights, a trial court is "authorized to impose such restrictions as the circumstances warrant."[16] Given these circumstances, the trial court did not abuse its discretion in enjoining White from having an outdoor shower as a condition of his right to visitation.[17]

---

[15] *See In the Interest of N. C.*, 363 Ga. App. at 407 (4) (holding that mother's contention that denial of visitation violated her rights under the Fourteenth Amendment to the United States Constitution could not be reviewed on appeal because she failed to raise the issue with the juvenile court and obtain a ruling); *Blackmore v. Blackmore*, 311 Ga. App. 885, 889 (3) (717 SE2d 504) (2011) (holding the issue of whether trial court violated father's constitutional rights in prohibiting parents from communicating, other than through an intermediary, except in event of a major medical emergency, could not be reviewed on appeal because father failed to raise issue below).

[16] *Blackmore*, 311 Ga. App. at 889-90 (3) (punctuation omitted).

[17] *See id.* (holding prohibiting parents from communicating, other than through an intermediary, except in event of a major medical emergency, and prohibiting the parent not having physical custody of children at the time from attending the

For all these reasons, we find the majority of the trial court's rulings did not constitute an abuse of discretion, but because its order contained impermissible self-executing visitation provisions, we must vacate it and remand the case for further proceedings consistent with this opinion.

*Judgment affirmed in part, vacated in part, and case remanded. Rickman, C. J., and Pipkin J., concur*.

---

children's extracurricular activities were narrowly tailored conditions justified by the evidence and in the best interests of the children and, therefore, did not infringe upon father's rights).

21